UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITADEL SERVICING CORPORATION,      CIVIL ACTION NO. _____

        Plaintiff,

vs.

CASTLE PLACEMENT, LLC and
CASTLE PLACEMENT GROUP, LLC,

        Defendants.

_____/

## DECLARATORY JUDGMENT COMPLAINT

Plaintiff Citadel Servicing Corporation ("Citadel") sues Defendants Castle Placement, LLC ("Castle Placement") and Castle Placement Group, LLC ("Castle Group") (collectively, "Castle"), stating:

## NATURE OF THE ACTION

1.    This is an action for declaratory judgment brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and Federal Rule of Civil Procedure 57.  It concerns an arbitration that Defendants brought against Citadel before the Financial Industry Regulatory Authority ("FINRA") on October 26, 2018, captioned *Castle Placement Group, LLC and Castle Placement, LLC v. Citadel Servicing Corp.,* Arbitration No. 18-03722 (the "Arbitration").

2.    As detailed below, Castle has demanded arbitration to enforce a Placement Agreement dated October 25, 2011 between Citadel and StoneCastle Securities, LLC ("SC Securities"), attached hereto as **Exhibit A**.  Under the

Placement Agreement, SC Securities was appointed for one year as the "exclusive agent [for] soliciting potential investors to make investments" in Citadel.

3.      The Placement Agreement contained a provision entitled "Arbitration of Controversies" stating:

> [Citadel] and [SC Securities] agree that all controversies between [Citadel] and [SC Securities] and/or any of their agents arising out of or concerning this Agreement, the services provided hereunder, or any related matter shall be determined by arbitration in accordance with the rules of the Financial Industry Regulatory Authority (FINRA).

*See* Ex. A at Schedule IV.

4.      Castle, however, is not a party to or an agent of parties to the Placement Agreement and has no rights to invoke arbitration or recover damages under the Placement Agreement.

## **PARTIES**

5.      Plaintiff Citadel is a California corporation, with its principal place of business in California.

6.      Defendants Castle are each a Delaware limited liability company, with its principal place of business in New York.

     a.      Non-parties Kenneth Margolis and Richard Luftig (collectively, the "Employees") are each 50% owners of Castle Group.

     b.      Castle Group is the sole owner of Castle Placement.

## JURISDICTION AND VENUE

7.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

8.     This Court has personal jurisdiction over Defendants because their principal place of business is in New York State and according to their allegations, they are based in New York State and many of the acts complained of and giving rise to the claims occurred in New York State.

9.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York.

## GENERAL ALLEGATIONS

### *Procedural history of the arbitration*

10.     In October 2018, Castle initiated the Arbitration, alleging claims for breach of contract, *quantum meruit*/unjust enrichment and an accounting. Castle seek damages in excess of $7 million, among other relief.

11.     Shortly after receiving the claim, FINRA sent a deficiency notice to Castle, pointing out that Castle was not a signatory to the Placement Agreement.

12.     Castle responded that, while non-signatories, they were nevertheless entitled to invoke the arbitration clause of the Placement Agreement because they were (a) SC Securities' agents (and the arbitration clause conferred the right to arbitrate on "agents" of the signatories) or (b) third-party beneficiaries

to the Placement Agreement (and therefore legally entitled to its benefits).  *See* Letter from J. Halter to FINRA Dispute Resolution (Nov. 19, 2018) ("Jurisdiction Letter"), attached hereto as **Exhibit B**.

13.    Without giving Citadel notice or an opportunity to respond, FINRA apparently accepted Castle's jurisdictional argument and mailed a form memorandum to Citadel advising that Castle had filed a claim in arbitration and "ordering" Citadel to answer.  Citadel moved to dismiss the arbitration for the same jurisdictional reasons alleged here, which motion is pending.

14.    Despite the pendency of our motion to dismiss for lack of jurisdiction, FINRA has already issued interim "orders" directing our compliance with a host of expensive and time-consuming pre-trial requirements, including paying its forum fees and the hourly fees of three arbitrators (which will likely exceed $30,000[1]), answering, complying with discovery, attending pre-trial telephone hearings, preparing for the final hearing and flying our California witnesses and a lawyer to a final hearing at FINRA's office in New York.

15.    It is strikingly unfair that FINRA continues to issue orders requiring costly compliance on penalty of default, without according us remotely the type of due process we would receive in any state or federal court.  FINRA's docket ordinarily consists of disputes about management of retail investment accounts brought against stockbrokers by their customers.  Despite the huge amount of

_____

[1] https://tools.finra.org/arbitration_calculator/ (based on a $7 million claim and ten total hearing "days," which includes pre-hearing conference time).

money at stake and the dispositive issue of its own jurisdiction, FINRA appears disinclined to probe these threshold issues of standing, instead plowing forward with an aggressive schedule.

16. To stem the tide, Citadel sought a declaratory judgment that this dispute was not arbitrable from the U.S. District Court for the Central District of California. On April 8, 2019, that Court dismissed the claim without prejudice for lack of personal jurisdiction over Castle. This lawsuit followed.

17. Particularly because Castle did not sign the Placement Agreement, the question of arbitrability of this dispute is an issue for this Court to decide.

18. Absent a ruling from this Court, FINRA may claim the authority to proceed to render an arbitral "judgment" which, under the FAA, would be enforceable with virtually no right to appeal.

### *Castle has no direct relationship with SC Securities (signatory to Placement Agreement)*

19. Castle has no legally cognizable relationship with SC Securities, the signatory to the Placement Agreement with Citadel, such that the Placement Agreement gives them the right to arbitrate against Citadel:

    a. ***Castle was not the agent of SC Securities during the term of the Placement Agreement***.

        i. To prove agency, Castle provided FINRA a 2010 employment agreement between StoneCastle Portfolio Advisors, LLC ("SPA"), which was a "sister" company of SC Securities, and the Employees (the "Employees' Contract"). *See* Ex. B, at Ex. 1 (Letter

from StoneCastle Partners, LLC to R. Luftig and K. Margolis (Jan. 31, 2010)).  The Employees' Contract indicated that "the capital raising contracts secured by [the Employees] are contracted through [SC Securities]."

ii.    The Employees' Contract does not establish Castle as agents of SC Securities for three reasons:

1.    It does not even mention Castle.

2.    There is no evidence that the Employees had any relationship whatsoever with Castle during the term of the Placement Agreement.  Indeed, Castle Placement was not even formed until 2015, long after the Placement Agreement had expired.

3.    Citadel had no reason to believe that the Employees (much less Castle) were agents of SC Securities because Citadel did not receive a copy of the Employees' Contract until after Castle initiated the Arbitration.

b.    ***Castle was not a third-party beneficiary to the Placement Agreement***.

i.    Again, Castle was not named in the Placement Agreement and Castle Placement was not even formed until after the Placement Agreement expired.

ii. There is no evidence that the Placement Agreement was intended to benefit Castle or even the Employees – as opposed to the signatories (Citadel and SC Securities).

20. The Placement Agreement prohibited SC Securities from assigning its rights or duties without Citadel's prior written consent. *See* Ex. A ¶ 16. SC Securities neither sought nor obtained Citadel's written consent to assign its rights or duties to Castle or, for that matter, to the Employees (who are non-parties).

21. The only relationship between Castle and SC Securities is that the Employees now own Castle. Castle argues that Castle Group is the new name for SPA, based on a chain of three name-changes dating back to 2011. That argument is unavailing for three reasons:

a. An examination of Delaware's public records indicates that the names do not match up.

b. Even if they did, SPA did not sign the Placement Agreement; SC Securities did.

c. Castle still has not explained how standing Castle Placement (as opposed to Castle Group) has standing to sue for breach of a 2011 contract when it did not exist until 2015.

22.    The chart below illustrates the absence of a legal relationship between Castle and SC Securities (the signatory):



---

[1] Although Castles did not raise this point in its Jurisdiction Letter, Citadel did receive email during the term of the Placement Agreement that Luftig signed as an officer of SC Securities.  Accordingly, we indicate here that Luftig was an employee not only of SPA, but also of SC Securities.

23.    Moreover, FINRA's online "BrokerCheck Reports" for the two FINRA-registered entities, StoneCastle Securities and Castle Placement, reveal that neither entity identified the other to FINRA as an affiliate.  This completely vitiates Castle's contention that it has standing to enforce the Placement Agreement because the two entities are related.  According to information contained in those reports, the organizations affiliated with those two entities may be charted as follows:

**StoneCastle Securities:**



**Castle Placement:**



24.    Castle has no right to invoke the arbitration clause of the Placement Agreement simply because Castle's owners (the Employees) previously worked for SC Securities or its sister company, SPA.

***Castle's claim is frivolous because***
***Castle was not a party to the Placement Agreement.***

25.    Regardless of whether Castle can invoke the arbitration clause (either as SC Securities' agent or as a third-party beneficiary to the Placement Agreement), Castle has no standing to sue for damages or an accounting based on alleged breach of the Placement Agreement because Castle was not a party to that Agreement.

## SPECIFIC ALLEGATIONS

### COUNT I
### (For a Declaration That This Matter Is Not Arbitrable)

26.    Citadel realleges, and incorporates by reference, each and every allegation set forth in paragraphs 1 through 25, inclusive.

27.    Citadel never agreed to arbitrate with Castle.

28.    An actual, present, and justiciable controversy has arisen between the parties concerning Citadel's right to a trial by jury on Castle's claims.

29.    Citadel seeks declaratory judgment from this Court that the Placement Agreement does not confer any rights on Castle to compel Citadel to arbitrate its claims.

### COUNT II
### (For a Declaration That Castle Lacks Standing)

30.    Citadel realleges, and incorporates by reference, each and every allegation set forth in paragraphs 1 through 25, inclusive.

31.    An actual, present, and justiciable controversy has arisen between the parties concerning Citadel's right to a trial by jury on Castle's claims.

32.     Citadel seeks declaratory judgment from this Court that Castle has no standing to sue or recover under the Placement Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiff requests judgment against the defendants, and each of them, for:

a.      Declarations, as prayed for above, that the defendants have no rights under the Placement Agreement to arbitrate or recover damages; and

b.      Fees and costs incurred in bringing this lawsuit.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues so triable.

LEWIS TEIN, P.L.
3059 Grand Avenue, Suite 340
Coconut Grove, Florida 33133
(305) 442-1101

By:*/s/ T. Omar Malone*
T. OMAR MALONE, Esq.
omalone@lewistein.com
MICHAEL R. TEIN, Esq.
(*pro hac vice* motion forthcoming)
tein@lewistein.com

*Attorneys for Citadel Servicing Corp.*