UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITADEL SERVICING CORPORATION,   Case No. 19 Civ. 3212 (KPF)

  Plaintiff,

vs.

CASTLE PLACEMENT, LLC,
CASTLE PLACEMENT GROUP, LLC,
KENNETH MARGOLIS, and RICHARD
LUFTIG,

  Defendants.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page(s)

I. SUMMARY ................................................................................................ 1

II. FACTS ...................................................................................................... 1

III. PROCEDURAL HISTORY ....................................................................... 2

IV. LEGAL STANDARD ................................................................................ 5

V. ARGUMENT ............................................................................................. 5

    A. Citadel Will Suffer Irreparable Harm if the Arbitration Is Not Enjoined ........................................................................................... 5

    B. Citadel Is Likely to Succeed on the Merits ..................................... 6

        1. The Court, not the arbitratoars, must decide arbitrability .... 6

        2. Defendants are not entitled to arbitrate .............................. 8

        3. Even if they were agents of StoneCastle, agents cannot invoke this arbitration clause for breach of the Placement Agreement in the absence of their principal ...................... 13

    C. An Injunction Is In the Public Interest ......................................... 14

VI. CONCLUSION ....................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Aguinaga v. USB AG,* 2010 WL 5093433 (S.D.N.Y. Dec. 14, 2010).................. 13

*Deutsche Bank Securities, Inc. v. Borjas,* 2018 WL 6200045
   (S.D.N.Y. Nov. 28, 2018) ............................................................................... 5

*Empire State Ethanol & Energy LLC v. BBI International,*
   2009 WL 790962 (N.D.N.Y. Mar. 20, 2009) ............................................... 12

*ESPN, Inc. v. Office of the Commissioner of Baseball,*
   76 F. Supp. 2d 383 (S.D.N.Y. 1999) ...................................................... 10-11

*First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995) .......................... 6

*Gerszberg v. Li & Fung (Trading) Ltd.,* 215 F. Supp. 3d 282 (S.D.N.Y. 2018) 7, 13

*Holzer v. Mondadori,* 2013 WL 1104269 (S.D.N.Y. Mar. 14, 2013) .................. 13

*Horn v. Toback,* 989 N.Y.S.2d 779 (N.Y. App. Term. 2014) ....................... 13-14

*In re Herman Miller, Inc.,* 1998 WL 193213 (S.D.N.Y. Apr. 21, 1998) ............. 6-7

*Iota Shipholding Ltd. v. Starr Indemnity & Liability Co.,*
   2017 WL 2374359 (S.D.N.Y. May 31, 2017) ................................................ 6

*Merrill Lynch Investment Managers v. Optibase, Ltd.,*
   337 F.3d 125 (2d Cir. 2003) ........................................................................... 5

*Murray v. UBS Securities, LLC,* 2014 WL 285093 (S.D.N.Y. Jan. 27, 2014) ....... 7

*National Football League Management Council v. National Football
   League Players Association,* 296 F. Supp. 3d 614 (S.D.N.Y. 2017) .............. 5

*New York ex rel. Schneiderman v. Actavis PLC,* 787 F.3d 638 (2d Cir. 2015) ..... 5

*Republic of Iraq v. ABB AG,* 769 F. Supp. 2d 605 (S.D.N.Y. 2011) ..................... 7

*Republic of Iraq v. BNP Paribas USA,* 472 F. App'x 11 (2d Cir. 2012) ...... 6, 7, 13

*Roby v. Corporation of Lloyd's,* 996 F.2d 1353 (2d Cir. 1993) ......................... 11

*Scher v. Bear Stearns & Co., Inc.,* 723 F. Supp. 211 (S.D.N.Y. 1989) ............... 12

*SEB S.A. v. Montgomery Ward & Co., Inc.*, 77 F. Supp. 2d 399
 (S.D.N.Y. 1999)................................................................................................ 14

*Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378 (S.D.N.Y. 2017) ........... 6

*Tellium, Inc. v. Corning Inc.*, 2004 WL 307238 (S.D.N.Y. Feb. 13, 2004) ......... 5-6

*Thomson-CSF, S.A. v. American Arbitration Association,*
 64 F.3d 773 (2d Cir. 1995) ....................................................................... 12

*W.P. Carey, Inc. v. Bigler*, 2019 WL 1382898 (S.D.N.Y. Mar. 27, 2019) ........... 12

# I. SUMMARY

Citadel seeks to enjoin a FINRA arbitration filed by non-parties to an arbitration agreement. FINRA has refused to dismiss the arbitration and refused even to stay it pending a decision from this Court – which is the right forum for deciding arbitrability. That has created an unseemly race to judgment which unfortunately necessitates this motion. For the below reasons, this Court should preliminarily enjoin the arbitration to allow orderly consideration of our claims for declaratory judgment on the merits.

# II. FACTS

1. Citadel Servicing Corporation ("Citadel") is a lender and servicer of non-prime home-mortgage loans, based in Irvine, California.

2. In October 2011, Citadel and StoneCastle Securities, LLC ("StoneCastle") entered into a Placement Agreement. Tein Decl. ¶ 2, Ex. A.[1] Under the Placement Agreement, Citadel appointed StoneCastle to act as one year as its "exclusive agent [for] soliciting potential investors to make investments" in Citadel. Ten Decl. Ex. A at p.1.

3. The Agreement confers rights and duties on the "Placement Agent" (StoneCastle), including that Citadel would pay "the Placement Agent as compensation for its services." Tein Decl. Ex. A ¶ 4.

4. Defendants here, Castle Placement Group LLC ("Castle Group") and its wholly-owned subsidiary Castle Placement LLC ("Castle Placement") (referred to as the "Castle Entities" or collectively, "Castle") and their owners Kenneth

---

[1] The facts and procedural history are taken from the Declaration of Michael R. Tein ("Tein Decl."), submitted herewith.

1

Margolis and Richard Luftig, did not sign and are not parties to the Placement Agreement.

5. The Placement Agreement contained a provision entitled "Arbitration of Controversies" stating:

> [Citadel] and [StoneCastle] agree that all controversies between [Citadel] and [StoneCastle] and/or any of their agents arising out of or concerning this Agreement, the services provided hereunder, or any related matter shall be determined by arbitration in accordance with the rules of the Financial Industry Regulatory Authority (FINRA).

Tein Decl. ¶ 6, Ex. A at Schedule IV.

6. The Placement Agreement also contained "merger" and anti-assignment provisions. Tein Decl. ¶¶ 4-5, Ex. A ¶ 16.

7. Defendants do not contend that StoneCastle assigned any rights to them under the Placement Agreement.

### III. PROCEDURAL HISTORY

8. In or around September 2018, Castle Placement filed a statement of claim against Citadel before FINRA, which was assigned Arbitration No. 18-02882. By memorandum dated September 24, 2018, FINRA advised Castle Placement that, because it was not a party to the pre-dispute arbitration agreement, the claims it alleged were not eligible for arbitration. Tein Decl. ¶ 7.

9. In October 2018, the Castle Entities filed another statement of claim against Citadel before FINRA, which was assigned Arbitration No. 18-03722 (the "Arbitration"). They alleged that Citadel closed a financing transaction as contemplated by the Placement Agreement in or around March 2013, for which

2

it failed to compensate StoneCastle.[2]  They claim breach of contract, *quantum meruit*/unjust enrichment and seek an accounting, demanding over $7 million. *Id.* ¶ 8.

10. Shortly after receiving the second claim, FINRA sent a deficiency notice to the Castle Entities, pointing out that neither of them signed the Placement Agreement. *Id.* ¶ 9.

11. In response, the Castle Entities asserted that they were entitled to invoke the arbitration clause of the Placement Agreement because they were (a) StoneCastle's agents (and the arbitration clause allegedly conferred the right to arbitrate on "agents" of the signatories) or (b) third-party beneficiaries to the Placement Agreement (and therefore legally entitled to its benefits).[3]  *See* Tein Decl. ¶ 10, Ex. B (Letter from J. Halter to FINRA Dispute Resolution (Nov. 19, 2018)).

12. In November 2018, without giving Citadel notice or an opportunity to respond, FINRA apparently accepted this *ex parte* jurisdictional argument and ordered Citadel to answer.  Tein Decl. ¶ 11.

13. In December 2018, Citadel sued for declaratory judgment in the U.S. District Court for the Central District of California.  In January 2019, Citadel asked FINRA to stay arbitration pending the court's decision.  FINRA refused any stay without a prior court order.  Tein Decl. ¶ 12.

---

[2] StoneCastle has never demanded any compensation from, or alleged any claims against, Citadel.

[3] Defendants appear to have abandoned their argument that they are third-party beneficiaries to the Placement Agreement.

3

14. In late January 2019, Citadel moved FINRA to dismiss the arbitration or stay it pending the court's decision (making the same jurisdictional arguments we make here).  Tein Decl. ¶ 13.

15. While our motion was pending, FINRA issued interim "orders" directing our compliance with a host of expensive and time-consuming pre-trial requirements, including paying its forum fees and the hourly fees of three arbitrators (which will likely exceed $30,000[4]), answering, complying with discovery, attending pre-trial telephone hearings, preparing for the final hearing and flying our California client representatives, witnesses and counsel to a final hearing at FINRA's office in New York.  Tein Decl. ¶ 14.

16. On April 8, 2019, the U.S. District Court for the C.D. California dismissed Citadel's declaratory judgment action without prejudice for lack of personal jurisdiction over Castle.  Tein Decl. ¶ 15.

17. On April 10, 2019, Citadel filed this action.

18. On April 26, 2019, Castle moved FINRA for leave to add Luftig and Margolis as claimants in the arbitration.  Tein Decl. ¶ 16.

19. On June 6, 2019, nearly one month after the "hearing," FINRA denied our motion to dismiss or stay pending this Court's decision on this lawsuit, stating only, "Respondent's Motion is denied."  In the same order, FINRA granted Castle leave to add Luftig and Margolis as claimants in the arbitration. Tein Decl. ¶ 17.

---

[4] https://tools.finra.org/arbitration_calculator/ (based on a $7 million claim and ten total hearing "days," which includes pre-hearing conference time).

## IV. LEGAL STANDARD

Citadel is entitled to a preliminary injunction if it can show "[i] irreparable harm; [ii] either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and [iii] that a preliminary injunction is in the public interest." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 296 F. Supp. 3d 614, 621 (S.D.N.Y. 2017) (Failla, J.) (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)).

## V. ARGUMENT

### A. CITADEL WILL SUFFER IRREPARABLE HARM IF THE ARITRATION IS NOT ENJOINED.

Citadel will be irreparably harmed if it is forced to arbitrate this non-arbitrable dispute. We are entitled to a preliminary injunction so that the Court (not FINRA) can decide arbitrability. Without a preliminary injunction, FINRA could moot this question by holding the final arbitration hearing.

"It is well-settled that a party forced to arbitrate a dispute that is not arbitrable is irreparably harmed by being forced to expend time and resources on an unenforceable arbitration to which it has not consented." *Deutsche Bank Secs., Inc. v. Borjas*, 2018 WL 6200045, at *2 (S.D.N.Y. Nov. 28, 2018) (Cote, J.) (internal quotation marks omitted); *see also Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (affirming finding that investment fund would suffer irreparable harm if forced to arbitrate a dispute that was "outside the arbitration agreement"); *Tellium, Inc. v. Corning Inc.*, 2004

WL 307238, at *3 (S.D.N.Y. Feb. 13, 2004) (Buccal, J.)("Compelling arbitration of a matter not properly subject to arbitration constitutes 'per se irreparable harm.'") (internal quotation marks omitted).

**B.    CITADEL IS LIKELY TO SUCCEED ON THE MERITS.**

    **1.    The Court, not the arbitrators, must decide arbitrability.**

Whether a dispute is arbitrable is "an issue for judicial determination unless the parties ***clearly and unmistakably*** provide otherwise." Iota Shipholding Ltd. v. Starr Indem. & Liab. Co., 2017 WL 2374359, at *6 (S.D.N.Y. May 31, 2017) (Failla, J.) (internal quotation marks omitted) (emphasis added). This is particularly so when the dispute is whether a given arbitration clause applies to specific parties. *See* Suqin Zhu v. Hakkasan NYC LLC, 291 F. Supp. 3d 378, 388 (S.D.N.Y. 2017) (Failla, J.) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943–46 (1995) (concluding that a court should decide whether the arbitration contract binds non-signatories)). Where "the arbitration clause does not clearly vest any right to invoke arbitration in a non-party . . . , *a fortiori*, it does not afford [a non-signatory] the right to have arbitrators rather than a court determine the arbitrability of its dispute." Republic of Iraq v. BNP Paribas USA, 472 F. App'x 11, 13 (2d Cir. 2012).

"[E]ven where parties to a contract commit the question of arbitrability to arbitration, a reviewing court must always ascertain for itself whether a resisting party is subject to a valid arbitration agreement, because even the broadest arbitration clause cannot bind a party who never agreed to it." Iota Shipholding, 2017 WL 2374359, at *6 (internal quotation marks and alteration omitted); *see also* In re Herman Miller, Inc., 1998 WL 193213, at *4 (S.D.N.Y. Apr. 21, 1998)

6

(Scheindlin, J.) ("Where the party seeking arbitration is not a party to the arbitration agreement, the question of arbitrability is for the court, not the arbitrator."), *aff'd sub nom. Herman Miller, Inc. v. Worth Capital, Inc.*, 173 F.3d 844 (2d Cir. 1999) (unpublished table decision).

We recognize that, under certain circumstances, arbitrators may decide arbitrability when the parties' contract expressly incorporates by reference certain rules that, in turn, delegate issues of arbitrability to the arbitrator. *E.g.*, *Murray v. UBS Sec., LLC*, 2014 WL 285093, at *13 (S.D.N.Y. Jan. 27, 2014) (Failla, J.). When arbitration is invoked by a non-signatory, however, incorporation of arbitral rules by reference does not constitute clear and unmistakable evidence of an intent for arbitrators to decide arbitrability. *Gerszberg v. Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 287-88 (S.D.N.Y. 2018) (Engelmayer, J.).

The Second Circuit has explicitly held that, "[t]o decide whether "arbitration of arbitrability" at a non-signatory's behest is appropriate, "***a court*** must first determine whether the non-signatory and the signatory have a sufficient relationship to each other and to the rights created under the agreement." *Republic of Iraq v. ABB AG*, 769 F. Supp. 2d 605, 611 (S.D.N.Y. 2011) (Stein, J.) (internal quotation marks and alterations omitted) (emphasis added), *aff'd sub nom. Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11 (2d Cir. 2012). Since this Court must decide arbitrability, it should preliminarily enjoin FINRA from arbitrating this case so that this Court can make that decision (without an earlier FINRA hearing mooting this question).

Once this Court takes jurisdiction of the question of arbitrability, it ultimately must decide the merits of Count 1, *i.e.*, whether Defendants are entitled to arbitrate their claim for breach of the Placement Agreement against Citadel. We are likely to succeed on the merits of this question as shown in the next section.

**2.    Defendants are not entitled to arbitrate.**

The Castle Entities admit that they did not sign the Placement Agreement, but they contend they are "agents" entitled to invoke arbitration because the arbitration clause provides that Citadel and StoneCastle (the signatories) agreed to arbitrate "all controversies between [Citadel] and [StoneCastle] and/or any of their agents." The Castle Entities, however, were never agents of StoneCastle by any stretch.

Castle's individual owners (Messrs. Luftig and Margolis) were formerly employed by StoneCastle. In 2015, after separating from StoneCastle (and long after the term of the Placement Agreement had expired), Luftig and Margolis created Castle Placement using it and its parent as vehicles to sue Citadel. Being former employees or agents of a signatory to an arbitration agreement, however, does not entitle Luftig and Margolis to transplant the contractual right to arbitrate from the signatory to them or their new companies.

The chart below illustrates the absence of a legal relationship between Castle and StoneCastle (the signatory):[5]



---

[5] The broken green arrow on this chart reflects Castle's recent argument that Castle Group is the new name for SPA, based on a chain of three name changes dating back to 2011. That argument is unavailing for three reasons: (1) an examination of Delaware's public records indicates that the names do not match up; (2) even if they did, SPA did not sign the Placement Agreement; StoneCastle did; (3) in 2015, StoneCastle Partners sold its 100% interest in SPA to Margolis and Luftig, who then changed the name to Castle Placement (i.e., this was not simply a name change). Furthermore; Castle has yet to explain how Castle Placement (as opposed to Castle Group) has standing to sue for breach of a 2011 contract when it did not exist until 2015. The only relationship between Castle and StoneCastle is that two former StoneCastle employees now own Castle. Defendants' counsel affirmed during the July 17th pre-motion conference that Luftig and Margolis ended their affiliation with StoneCastle in 2015.

Defendants assert that they were StoneCastle's agents because "the parties understood that Castle, through Mr. Luftig and Mr. Margolis, would be performing the work and would be entitled to compensation."[6] But the Agreement explicitly states that Citadel engaged **StoneCastle** as the Placement Agent, and refers repeatedly to the rights and duties of the Placement Agent, including that Citadel would pay "the Placement Agent as compensation for its services."[7] There is nothing in the Agreement to indicate the parties intended for any entity other than StoneCastle to provide or be paid for the contracted services, and the Agreement contains no reference whatsoever to the Castle Entities (or any alleged predecessor).

Moreover, the Agreement contains an anti-assignment clause, which prohibited StoneCastle from assigning its rights or duties to any other person or entity without first obtaining Citadel's written consent to such assignment. Having failed to obtain such consent, it was not permitted to assign any of its contractual rights or duties.

To support their assertion that they "provided [their] service in the name of and by affiliation with" StoneCastle, Defendants rely on a January 2010 letter setting forth the terms of employment between *StoneCastle Portfolio Advisors* and Messrs. Luftig and Margolis.[8] This employment agreement was not provided to Citadel, however, nor was it incorporated into the Placement Agreement. "New York law prohibits the incorporation of extrinsic writings into an agreement

---

[6] Tein Decl. Ex. B.

[7] Tein Decl., Ex. A ¶ 4.

[8] Tein Decl., Ex. B at 1-2, Ex. 1.

10

unless those writings are specifically incorporated by reference." *ESPN, Inc. v. Office of the Comm'r of Baseball,* 76 F. Supp. 2d 383, 404 (S.D.N.Y. 1999) (Scheindlin, J.). The Placement Agreement also contains no reference whatsoever to StoneCastle Portfolio Advisors or any other affiliated entity (let alone any of the Defendants).

Additionally, the Placement Agreement contains a "merger" provision, by which the parties acknowledged that the Agreement "constitute[d] the *entire agreement* of the parties to this Agreement and supersede[d] all prior written or oral and all contemporaneous oral agreements, understandings and negotiations with respect to the subject matter hereof."[9] In light of this provision and because the Agreement contains no ambiguity as to the entity that would be providing or compensated for the contracted services, the employment agreement may not be used to modify or contradict the terms of the Agreement. *See, e.g., ESPN*, 76 F. Supp. 2d at 404 (noting that, where an agreement contains a merger clause, extrinsic evidence is admissible only where it "would explain certain ambiguities in the contract," but not where it would "modify or contradict the terms of [the] contract").

Additionally, even if any of the Defendants could be deemed an agent of StoneCastle, they were undisclosed agents. Although the Second Circuit has held that **disclosed** agents of a signatory to an arbitration agreement "are protected by that agreement," *Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1360 (2d Cir. 1993), Citadel is not aware of a single reported decision in which the Second

---

[9] Tein Decl. Ex. A, ¶ 16 (emphasis added).

Circuit or a New York federal court has found that the agent of a non-signatory could **enforce** an arbitration provision against a signatory. Rather, as in *Roby*, courts have merely found that non-signatory agents could not **avoid** arbitration at the behest of a signatory.[10] *See also Thomson-CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995) ("Traditional principles of agency law may bind a nonsignatory to an arbitration agreement.").

Moreover, "[n]othing in [the Second] Circuit's jurisprudence indicates that a nonsignatory to an arbitrable agreement may compel arbitration on the basis of such an undisclosed agency relationship with a signatory, even where there may also be a separate disclosed agency relationship." *Empire State Ethanol & Energy LLC v. BBI Int'l,* 2009 WL 790962, at *4 (N.D.N.Y. Mar. 20, 2009) (internal quotation marks omitted). Thus, Defendants cannot claim the protection of the arbitration clause because they were, at most, undisclosed agents. *See id.* (finding non-signatory defendants who allegedly acted on signatory's behalf could not enforce arbitration clause based on an agency or employment relationship with signatory, where party opposing arbitration was unaware of agency relationship).

Supporting our likelihood of success, this Court recently denied a motion to compel a non-signatory parent to arbitrate before FINRA based on its subsidiary's agreement to arbitrate. *See W.P. Carey, Inc. v. Bigler*, 2019 WL 1382898, at *6 (S.D.N.Y. Mar. 27, 2019) (Failla, J.). Although, unlike here, the

---

[10] Cases are legion that arbitration clauses cannot be avoided by suing an agent for a signatory. *See generally Scher v. Bear Stearns & Co., Inc.,* 723 F. Supp. 211, 216 (S.D.N.Y. 1989) (citing cases).

12

non-signatory in *Carey* was being sued rather than suing in arbitration, the same result should obtain here. *See, e.g., BNP Paribas*, 472 F. App'x at 13 (rejecting non-signatory Iraq's position that it was a third-party beneficiary entitled to compel arbitration); *Gerszberg*, 215 F. Supp. 3d at 287-88 (granting preliminary injunction against arbitration brought by non-signatory claiming to have been a third-party beneficiary to arbitral agreement); *Holzer v. Mondadori,* 2013 WL 1104269, at *9 (S.D.N.Y. Mar. 14, 2013) (Buchwald, J.) (denying motion to compel arbitration because non-signatory did not have a "sufficiently close relationship to [signatory] to compel arbitration of arbitrability").

### 3. Even if they were agents of StoneCastle, agents cannot invoke this arbitration clause for breach of the Placement Agreement in the absence of their principal.

There is no evidence that Margolis was an agent of StoneCastle. There is an email indicating that Luftig was an agent of StoneCastle. Regardless, the purpose of including agents in the arbitration clause was to ensure that a signatory could not avoid arbitration just by suing the signatory's agent as instead of the signatory itself. It was not to ensure the absurd result that an agent, instead of its principal (signatory), could sue the other signatory for breach of the agreement.

Under New York law, "an agent of a disclosed principal has rights and duties under, and can enforce, the principal[']s contract only when there is clear and explicit evidence of the agent[']s intention to substitute or superadd his personal liability for, or to, that of his principal." *Aguinaga v. USB AG,* 2010 WL 5093433, at *7 (S.D.N.Y. Dec. 14, 2010) (Holwell, J.); *see also Horn v. Toback,* 989 N.Y.S.2d 779, 781-82 (N.Y. App. Term. 2014) ("A person making or

13

purporting to make a contract with another as an agent for a disclosed principal does not become a party to the contract absent an agreement or indication to that effect. . . . Nor can plaintiff, in her capacity as agent for a disclosed principal, sue to enforce the contract that she entered into with defendant on behalf of her disclosed principal.") (internal quotation marks and citations omitted).

As noted above, the Placement Agreement prohibited StoneCastle from assigning any of its rights or duties, including the right to enforce the Agreement, to any person or entity (including Defendants). The employment agreement between SPA and Messrs. Luftig and Margolis likewise did not grant Luftig or Margolis (or their companies) any rights under the Placement Agreement. Nor could it, given the merger provision in that Agreement. Thus, there is no evidence that StoneCastle agreed or intended for any of Defendants to enforce the Placement Agreement in its stead.

### C. AN INJUNCTION IS IN THE PUBLIC INTEREST.

While this is a private dispute, there is no public interest in arbitrating non-arbitrable disputes. Moreover, the "public interest favors an injunction" where, as here, one is necessary to maintain the status quo between the parties until a determination on the merits is made, no critical public interest would be harmed by its issuance, and the enjoined party can be effectively vindicated after a trial on the merits. [SEB S.A. v. Montgomery Ward & Co., Inc., 77 F. Supp. 2d 399, 405 (S.D.N.Y. 1999)](#) (Parker, J.).

**VI.     CONCLUSION**

Since FINRA would not defer arbitrability to this Court, a preliminary injunction should issue so this Court can decide arbitrability. After the preliminary injunction is issued, this Court can proceed to the merits of deciding whether this case is arbitrable and if not, whether non-signatory / non-assignee / non-beneficiary Defendants can recover under the Placement Agreement.

Dated:     August 2, 2019

                                              Respectfully submitted,

                                              **TEIN MALONE PLLC**
                                              3059 Grand Avenue
                                              Coconut Grove, Florida 33133
                                              (305) 442-1101

                                              By: /s/ *T. Omar Malone*
                                                   T. OMAR MALONE
                                                   omalone@teinmalone.com
                                                 MICHAEL R. TEIN
                                                 (admitted *pro hac vice*)
                                                 tein@teinmalone.com

                                              *Attorneys for Citadel Servicing Corp.*