StoneCastle Securities, LLC
142 West 57th Street
New York, New York 10019
Tel (646) 600-7510

October 25, 2011

Citadel Servicing Corporation
95 Argonaut, Suite 230
Aliso Viejo, CA 92656

Attention: Daniel L. Perl, Chairman & CEO

This Agreement (the "Agreement") confirms that StoneCastle Securities, LLC ("StoneCastle" or the "Placement Agent") has been engaged as exclusive agent on a "reasonable commercial efforts" basis for Citadel Servicing Corporation ("Citadel" or the "Company"), soliciting potential investors to make investments (the "Investments") in the Company or an affiliate, which will be primarily engaged in originating and servicing residential real estate loans, in connection with a proposed Private Placement (as defined herein). The Company will use commercially reasonable efforts to cause any new company, fund, or entity that is formed which may raise capital or engage in a related transaction (such company, "Newco") to enter into a definitive Placement Agent Agreement with the Placement Agent, which Placement Agent Agreement will reflect the terms and conditions set forth herein as well as other customary terms and conditions for similar transactions and agreements (the "Placement Agent Agreement").

1. In its capacity as placement agent, the Placement Agent will work with the Company and Newco in identifying potential investors (the "Investors") and using the Placement Agent's reasonable commercial efforts to assist in arranging Investments by Investors. In order to coordinate the efforts of the Placement Agent and the Company to most efficiently execute the Private Placement, both the Company and the Placement Agent will promptly inform the other party to this Agreement of interest received by the Company or the Placement Agent (or their respective directors, officers, employees, Agent or shareholders) from a third party in respect of the Private Placement. A list of Citadel prospective investors (the "Citadel Prospective Investors") is included in Schedule III.

2. The term "Private Placement" means i) the proposed offering and sale to any Investor by private placement of the Investments to be made in accordance with the exemption from the registration requirements of federal and state securities laws, including, without limitation, the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder (collectively, the "Act") provided by Regulation D under the Act ("Regulation D") and the qualification and registration requirements of applicable state and foreign securities or blue sky laws and regulations pursuant to a private placement memorandum and/or other disclosure materials (as amended and supplemented, the "Memorandum") prepared by the Company (the "Fund"), or ii) any related transactions (the "Related Transactions") including without limitation a business combination,


EXHIBIT A

merger, partial merger, acquisition, equity investment, debt investment, stock purchase or exchange, divestiture, joint venture, strategic alliance, strategic venture, senior, management combination, senior management employment (excluding the hiring by Company of employees in the ordinary course of business), asset sale, partnership, loan, or debt or equity purchase or sale. The exact price and amount of Investments will be determined through negotiations between the Company, Newco and the Placement Agent, on the one hand, and the Investors, on the other hand.

3. In connection with the Private Placement, the Company, Newco and the Placement Agent will comply with the Act, Regulation D and the state and foreign securities or blue sky laws and regulations for all offers and sales of the Investments; provided, however, that with respect to offers of the Investments made by the Placement Agent, the Placement Agent will be able to rely on Company's or Newco's counsel with respect to blue sky matters. It is contemplated that investors will be persons who qualify as "accredited investors" under Regulation D and as institutional investors under state and foreign securities or blue sky laws and regulations. All documents to be used in the Private Placement, including, without limitation, the Memorandum, will be reviewed by, and subject to the approval of, the Company, the Placement Agent and their respective counsel prior to their use in making offers or sales of the Investments. The Company and Newco will be responsible for updating, amending and supplementing the Memorandum prior to the closing of the Private Placement as required by applicable laws. StoneCastle will obtain written approval of any version of the Memorandum prior to delivering it a prospective investor.

4. The Company agrees to pay, or cause Newco to pay, the Placement Agent as compensation for its services under this engagement a fee as detailed below in Schedule II.

Unless otherwise specified in this Agreement or the Placement Agent Agreement, compensation which is payable to the Placement Agent pursuant to this Agreement shall be paid by the Company or Newco upon the closing of the Private Placement except with respect to (a) unfunded commitments which shall be payable upon funding and (b) Warrant Securities which shall be payable upon their exercise by the Investor. The aforementioned subparagraphs (a) and (b) shall survive any termination or expiration of this Agreement.

5. The Company agrees to pay the Placement Agent's reasonable out-of-pocket expenses in connection with this engagement; provided that the Placement Agent will not incur expenses in excess of $2,000 per month without the prior written consent of the Company, and provided that the Placement Agent will not incur any single expenses in excess of $500 without the prior written consent of the Company.

6. The Company will furnish, or cause to be furnished, to the Placement Agent (and if negotiations proceed with any prospective investor, will furnish all information about each prospective investor that the Company possesses and request that each prospective investor furnish the Placement Agent) such information as the Placement Agent believes appropriate to its engagement hereunder (all such information, the "Information"), and the Company represents that all such Information regarding the Company and Newco will be accurate and complete in all material respects as of the date such Information is furnished. The Placement Agent will rely solely on the accuracy and completeness of the Information without assuming any responsibility for investigation or independent verification. It is specifically understood that the Placement Agent has not made, and will not make, any physical inspection of the properties or assets of the Company or Newco and with respect to any financial forecasts that may be furnished to or discussed with the Placement Agent by the Company or Newco, the Placement Agent will assume that they have been reasonably prepared and reflect the best then currently available estimates and judgments of the Company's management as to the expected future financial performance of the Company and Newco. The Placement Agent agrees that it will not provide any disclosure materials that contains such Information (including the Memorandum) or any other written materials regarding the Company, Newco, the Investments or the Private Placement to potential investors unless the specific writing that contains such Information has been approved by the Company, which approval shall not to be unreasonably withheld. The Company will notify the Placement Agent promptly of any material change that becomes known to the Company in any (i) Information previously made available to the Placement Agent or any prospective investor by the Company or Newco and (ii) the business, affairs, condition (financial or otherwise), shareholders' equity, results of operations or prospects of the Company and its subsidiaries, taken as a whole, that occurs during the term of the Placement Agent's engagement hereunder. In addition, the Company shall inform the Placement Agent, promptly after it becomes aware thereof, of the issuance of any cease trading, stop order or restraining order or the initiation or threat of initiation of any proceedings, litigation or investigation with respect to the Company or any of its securities before or by any regulatory, administrative or other governmental or public body or authority or any court. The Company may fund discrete loans on a one-off basis through non-institutional investors during the term of this Agreement, however such funded loans shall not exceed, in aggregate, $25 million in face amount.

7. The Company will, or will cause Newco to, at the closing of the Private Placement, furnish the Placement Agent with the same opinion, if any, (including any legal assurances regarding compliance with applicable corporate and securities laws and any negative comfort as to full and accurate disclosure) of its counsel, as is furnished to the investors, addressed to the Placement Agent or together with a letter from such counsel that the Placement Agent may rely on its opinion as if directed to the Placement Agent. In addition, at the closing of the Private Placement, the Company will, or will cause

        Newco to, provide the Placement Agent with the same certificates of the officers of Newco as are furnished to the investors and such other certification, opinions and documents as the Placement Agent or its counsel may deem appropriate, in form and substance satisfactory to the Placement Agent and its counsel, including any updates of the Company's representations and warranties set forth herein. In addition, the Company will, or will cause Newco to, furnish to investors and the Placement Agent its Form ADV, together with quarterly and annual reports.

8.    The Placement Agent may decline to participate in the Private Placement by providing written notice to the Company if it reasonably determines that the Private Placement has become impractical or undesirable. Unless the Placement Agent has notified the Company in writing of its decision not to participate, the Company will not make any commitment with any other securities broker-dealer or placement agent to participate in the Private Placement without the Placement Agent's prior written consent so long as this Agreement has not been terminated.

9.    The Company represents, warrants and agrees and, will use its commercially reasonable efforts to cause Newco to make the following representations, warranties and agreements in the Placement Agent Agreement, in addition to any representations, warranties and agreements to be made by Newco to the investors, that:

      (i)    The Investments will be offered and sold in compliance with the requirements for the exemption from the registration requirements of the Act contained in Regulation D and with all other state and foreign securities or blue sky laws and regulations.

      (ii)    The Company will, or will cause Newco to, file appropriate notices on Form D with the Securities and Exchange Commission, as well as all filings required to be made with respect to state and foreign securities or blue sky laws and regulations.

      (iii)    The Memorandum will furnish all information required to be furnished to investors under Regulation D and will not contain any untrue statement of a material fact or omit to state a material fact required to be stated in the Memorandum or necessary to make the statements therein not misleading; provided, however, that this representation and warranty does not extend to written material relating to the Placement Agent that is furnished to the Company or Newco by the Placement Agent expressly for use in the Memorandum.

      (iv)    Neither the Company nor Newco will, for a period of six months following the final closing date of the Private Placement, offer for sale or sell any securities unless, in the opinion of the Company's counsel, concurred in by the Placement Agent's counsel, such offer or sale does not jeopardize the availability of the exemptions from the registration and qualification requirements of the Act and

    state and foreign securities or blue sky laws and regulations with respect to the Private Placement, and neither the Company nor Newco has not engaged in any such offering during the six months prior to the date of this Agreement.

  (v) The Company has all requisite limited liability company power and authority to execute and perform this Agreement; all limited liability company action necessary for the authorization, execution, delivery and performance of this Agreement has been taken; this Agreement constitutes a valid and binding obligation of the Company; the execution and performance of this Agreement by the Company and the offer and sale of the Investments in the Private Placement will not violate any provision of the Company's charter or bylaws or any agreement or other instrument to which the Company is a party or by which it is bound; and any necessary approvals, governmental and private, will be obtained by the Company before the closing of the Private Placement.

  (vi) The Company has all requisite corporate power and authority to execute and perform this Agreement on behalf of Newco and to make the representations and warranties and enter into the agreements and obligations (including the obligations to provide indemnification and contribution as provided in Schedule I hereto) on behalf of Newco as set forth herein; upon execution and delivery by the Company, this Agreement will constitute a valid and binding obligation of Newco.

10. The Placement Agent represents, warrants and agrees that:

  (i) The Investments will be offered in compliance with the requirements for the exemption from the registration requirements of the Act contained in Regulation D and with all other state and foreign securities or blue sky laws and regulations: provided, however, that the Placement Agent will be able to rely on Company's counsel with respect to blue sky matters.

  (ii) It has all requisite power and authority to execute and perform this Agreement; all corporate action necessary for the authorization, execution, delivery and performance of this Agreement has been taken; this Agreement constitutes a valid and binding obligation of it.

  (iii) It is duly registered as a broker-dealer pursuant to the Exchange Act and is a member in good standing of FINRA.

11. The Company agrees on behalf of itself and Newco that services given by the Placement Agent in connection with its engagement hereunder is for the benefit and use of the Company and Newco in considering the Private Placement to which such services relate, and the Company agrees on behalf of itself and Newco that no such services shall be used

       for any other purpose or be disclosed, reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor shall any public references to the Placement Agent be made by or on behalf of the Company or Newco, in each case without the Placement Agent's prior written consent, which consent shall not be unreasonably withheld. Notwithstanding anything to the contrary contained herein, the Placement Agent, the Company and Newco shall be permitted to disclose the tax treatment and tax structure of the Investments (including any materials, opinions or analyses relating to such tax treatment or tax structure, but without disclosure of identifying information or, except to the extent relating to such tax structure or tax treatment, any nonpublic commercial or financial information) on and after the earliest to occur of the date of (i) public announcement of discussions relating to the Private Placement, (ii) public announcement of the Private Placement or (iii) execution of a definitive agreement (with or without conditions) to sell any of the Investments in the Private Placement; provided, however, that if the Private Placement is not consummated for any reason, the provisions of this sentence shall cease to apply.

12. The Company acknowledges that each of the Company and Newco is a sophisticated business enterprise with competent internal financial advisors and legal counsel, and the Company has retained the Placement Agent for the limited purposes set forth in this Agreement. The parties acknowledge and agree that their respective rights and obligations as set forth herein are contractual in nature. The Company agrees on its own behalf and on behalf of Newco that (i) the Placement Agent has been retained to act solely as placement agent for the Company and Newco in connection with the sale by Private Placement of Investments, (ii) the Placement Agent, as an independent contractor under this Agreement, shall not assume the responsibilities of an advisor to or fiduciary or agent of the Company, Newco or their respective stockholders in connection with the performance of the Placement Agent's services hereunder and (iii) any duties of the Placement Agent arising out of its engagement shall be owed solely to the Company and Newco. Accordingly, (i) the Company on its own behalf and on behalf of Newco disclaims any intention to impose any fiduciary obligations on the Placement Agent by virtue of the engagement contemplated by this Agreement, (ii) the Placement Agent shall not be deemed to have any fiduciary duties or obligations to the investors, the Company, Newco, any other business entities, or their respective officers, directors, shareholders, partners, members, affiliates or creditors, as a result of this Agreement or the services to be provided pursuant hereto and (iii) the Company hereby on its own behalf and on behalf of Newco waives and releases, to the fullest extent permitted by law, any claims that the Company or Newco may have against the Placement Agent with respect to any breach or alleged breach of fiduciary duty hereunder. The Company on its own behalf and on behalf of Newco further agrees that under no circumstances shall the execution of this Agreement or any act of the Placement Agent hereunder commit or be deemed a commitment by the Placement Agent (or any of its respective affiliates) to provide or arrange any bank financing or other debt or equity financing for any transaction or to

purchase any security in connection therewith. It is specifically understood that neither the Company's Board of Directors nor Newco's Board of Directors will base its decisions regarding whether and how to pursue the Private Placement solely on the Placement Agent's advice, but will also consider the advice of the Company's and Newco's legal, tax and other business advisors and such other factors which they consider appropriate. The Placement Agent has no responsibility to the Company or Newco with respect to the transaction contemplated hereby except the obligations expressly set forth in this Agreement. The Placement Agent and its respective affiliates may be engaged in a broad range of securities transactions and activities and financial services that involve interests that differ from or compete with those of the Company and Newco and the Placement Agent has no obligation to disclose any of such interest by virtue of any advisory, agency or fiduciary relationship. In the ordinary course of the Placement Agent's business, the Placement Agent or its respective affiliates (i) may at any time hold long or short positions, and may trade or otherwise effect transactions, for their own accounts or the accounts of customers, in debt or equity securities of any prospective investor, the Company, Newco or any other company that may be involved in any competing transaction and (ii) may at any time be providing or arranging financing and other financial services to a prospective investor or other companies that may be involved in a competing transaction or business. The rights and obligations the Company or Newco may have to the Placement Agent or any of the Placement Agent's respective affiliates under any credit or other agreement are separate from the Company's and Newco's rights and obligations under this Agreement and will not be affected by the Placement Agent's services hereunder.

This Agreement supersedes all prior agreements and understandings (whether written or oral) between the Company and the Placement Agent, with respect to the subject matter hereof.

13. If the Private Placement closes and the Company or Newco decide to conduct an additional private placement of securities (other than the Private Placement) within twelve months from the termination of this Agreement, the Company, Newco or their respective affiliate will offer to engage the Placement Agent to act as the sole or joint private placement agent (in the case of a private placement) or lead initial purchaser (in the case of a Rule 144A offering), on the same terms at the terms contained in this Agreement. The terms of each such additional engagement will be set forth in a separate Agreement providing for compensation, other terms and documentation competitive with customary terms of investment banking firms for similar transactions. This clause 13 will not be effective unless and until the Private Placement or a Related Transaction closes.

14. The Company and the Placement Agent agree to the provisions with respect to the Company's indemnity of the Placement Agent and other matters set forth in Schedule I,

the terms of which are incorporated herein in their entirety. Schedule I is an integral part of this Agreement and shall survive any termination or expiration of this Agreement.

15. Unless earlier terminated as herein provided, the term of this engagement will continue until twelve months from the date hereof ("Stated Termination Date"). The Company shall pay to the Placement Agent to the extent provided for herein with respect to any investment in the Company, its affiliates, or any other entity managed by the Company or its affiliate, or any Related Transaction, by an Investor which is consummated or for which a definitive agreement has been signed within twelve months after the later of the closing of the Private Placement or any termination of the Agreement, as if such investment or Related Transaction constituted an Investment or Related Transaction hereunder. In addition, provisions relating to the status of the Placement Agent as an independent contractor, the limitation on to whom the Placement Agent shall owe any duties, governing law, successors and assigns, and the waiver of the right to trial by jury shall survive any termination of this Agreement.

16. This Agreement, including Schedule I and any annexes or attachments hereto, constitutes the entire agreement of the parties to this Agreement and supersedes all prior written or oral and all contemporaneous oral agreements, understandings and negotiations with respect to the subject matter hereof. This Agreement, Schedule I, any annexes or attachments hereto and any rights, duties or obligations hereunder may not be waived, amended, modified or assigned, in any way, in whole or in part, including by operation of law, without the prior written consent of, and shall inure to the benefit of and be binding upon the successors, assigns and personal representatives of, each of the parties hereto.

17. In case any provision of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

18. This Agreement and any claim or dispute of any kind or nature whatsoever arising out of, or relating to, this Agreement or the Placement Agent's engagement hereunder, directly or indirectly (including any claim concerning services provided pursuant to this Agreement), shall be governed by and construed in accordance with the laws of the State of New York, Borough of Manhattan. Any rights to trial by jury with respect to any claim, action or proceeding, directly or indirectly, arising out of, or relating to, this Agreement or the Placement Agent's engagement hereunder are waived by the Placement Agent and the Company, on its own behalf and on behalf of Newco. Notwithstanding anything to the contrary contained herein, the parties hereby agree to the terms of the Arbitration of Controversies section included in Schedule IV herein.

StoneCastle Securities, LLC
October 25, 2011
Page 9

19. All communications hereunder shall be in writing and shall be mailed, hand delivered, e-mailed or telecopied and confirmed to the parties hereto as follows:

If to StoneCastle:

StoneCastle Securities, LLC
120 West 45th Street
New York, New York 10036

Facsimile: (212) 354-6565
e-mail: mmayers@stonecastlepartners.com
Attention: Matthew Mayers

and

email: rluftig@scpany.com
Attention: Richard Luftig


If to the Company:

Citadel Servicing Corporation
95 Argonaut, Suite 230
Aliso Viejo, California 92656

Facsimile: (949) 313-1208
E-mail: danperl@citadelservicing.com
Attention: Daniel L. Perl
         Chairman & CEO

StoneCastle Securities, LLC
October 25, 2011
Page 10

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement.

Very truly yours,

STONECASTLE SECURITIES, LLC

By: _____
    Name: Matthew Mauger
    Title: Compliance Officer

Accepted and agreed to
as of the date first written above:

Citadel Servicing Corporation

By: _____
    Name: Daniel L. Perl
    Title: Chairman & CEO

SCHEDULE I

## INDEMNIFICATION AGREEMENT

The Company agrees to indemnify, or cause Newco to indemnify, on a joint and several basis, the Placement Agent, any controlling person of the Placement Agent and each of their respective directors, officers, employees, Agent, affiliates and representatives (each, an "Indemnified Party") and hold each of them harmless against any and all losses, claims, damages, expenses, liabilities, joint or several (collectively, "Liabilities") to which the Indemnified Parties may become liable, directly or indirectly, arising out of, or relating to, the agreement to which this Schedule I is attached (the "Agreement") or the Placement Agent's services thereunder, unless it is finally judicially determined that the Liabilities resulted from the actual fraud, gross negligence or willful misconduct of such Indemnified Party. The Company further agrees to reimburse, or to cause Newco to reimburse, each Indemnified Party immediately upon request for all expenses (including reasonable attorneys' fees and expenses) reasonably incurred in connection with the investigation of, preparation for, defense of, or providing evidence in, any action, claim, suit, proceeding or investigation (each and collectively, an "Action"), directly or indirectly, arising out of, or relating to, the Agreement or the Placement Agent's services thereunder, whether or not pending or threatened and whether or not any Indemnified Party is a party to such Action. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company, Newco or any person asserting claims on behalf of or in right of the Company or Newco, directly or indirectly, arising out of, or relating to, the Agreement or the Placement Agent's services thereunder, unless it is finally judicially determined that such liability resulted from the actual fraud, gross negligence or willful misconduct of such Indemnified Party.

The Company agrees that, without the Placement Agent's prior written consent, it will not, and will not permit Newco to, agree to any settlement of, compromise or consent to the entry of any judgment in or other termination of (each and collectively, a "Settlement") any Action in respect of which indemnification could be sought hereunder (whether or not the Placement Agent or any other Indemnified Party is an actual or potential party to such Action), unless (a) such Settlement includes an unconditional release of each Indemnified Party from any liabilities arising out of such Action and (b) the parties agree that the terms of such Settlement shall remain confidential.

The Company and the Placement Agent agree that if any indemnification or reimbursement sought pursuant to the first paragraph of this Schedule I is for any reason unavailable or insufficient to hold any Indemnified Party harmless (except by reason of the actual fraud, gross negligence or willful misconduct of an Indemnified Party) then, whether the Placement Agent is the person entitled to indemnification or reimbursement, the Company shall contribute, or cause Newco to contribute and the Placement Agent shall contribute, in each case, to the Liabilities for which such indemnification or reimbursement is held unavailable in such proportion as is appropriate to reflect (a) the relative benefits to the Company and Newco on the one hand and the Placement Agent on the other hand, in connection with the transaction to which such indemnification or reimbursement relates or (b) if the allocation provided by clause (a) above is

not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a), but also the relative fault of the parties as well as any other relevant equitable considerations; provided, however, that in no event shall the amount to be contributed by the Placement Agent exceed the fees actually received by such Placement Agent under the Agreement. The Company agrees that, for the purposes of this paragraph, the relative benefits to the Company and Newco, on the one hand, and the Placement Agent, on the other hand, of the contemplated transaction (whether or not such transaction is consummated) shall be deemed to be in the same proportion that the aggregate consideration payable, exchangeable or transferable (or contemplated to be payable, exchangeable or transferable) in such transaction bears to the fees paid or payable to the Placement Agent under the Agreement.

The rights of the Indemnified Parties referred to above shall be in addition to any rights that any Indemnified Party may otherwise have.

## FEE SCHEDULE

The fee to the Placement Agent for the Private Placement shall be paid at closing in cash in accordance with the following schedule:

1) 3.5% on equity capital;

2) 3.5% on the exercise price of all securities constituting warrants, options or other rights to purchase securities issued to Investors, which is payable upon exercise;

3) In connection with Related Transactions, the greater of: i) 3.5% times the equivalent commensurate capitalization of the transaction; or ii) $1.75 million;

4) In connection with an investment or Related Transaction from or with a Citadel Prospective Investor, StoneCastle's fee will equal 50% of the fees specified in 1, 2, and 3 of this Schedule II.

## CITADEL PROSPECTIVE INVESTORS

| | |
|---|---|
| Matt Bass | Alliance Bernstein |
| Mike Commaroto | Apollo (Vantium) |
| Darren O'Brien | WL Ross |
| Randy Robertson | Blackrock |
| Bill Roth | Two Harbors |
| Bob Shayegani | W.R. Berkley (Berkley Dean) |
| Aga Khan | Stone Point Capital |

# SCHEDULE IV

## ARBITRATION OF CONTROVERSIES

This Agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement the parties agree as follows:

(A) All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

(B) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

(C) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

(D) The arbitrators do not have to explain the reason(s) for their award.

(E) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

(F) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

(G) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.

The Company and StoneCastle agree that all controversies between the Company and StoneCastle and/or any of their agents arising out of or concerning this Agreement, the services provided hereunder, or any related matter shall be determined by arbitration in accordance with the rules of the Financial Industry Regulatory Authority (FINRA). Any such arbitration proceeding shall be held in the Borough of Manhattan in The City of New York. The award of the arbitrator or a majority of the arbitrators shall be final. Judgment on the award rendered may be entered in any state or federal court having jurisdiction.

Applicable Law; Jurisdiction; Jury Waiver

This Agreement shall be governed by and construed in accordance with the laws of the State of New York. Any claim or action arising under this Agreement and not subject to arbitration in accordance with this section and not subject to arbitration in accordance with this section may be brought in the state or federal courts located in the Borough of Manhattan in The City of New York, and Company hereby irrevocably consents to and accepts the exclusive jurisdiction of such courts. THE COMPANY HEREBY WAIVES THE RIGHT TO A JURY TRIAL IN ANY SUCH ACTION AND UNDERSTANDS THAT SUCH WAIVER IS A CONDITION TO STONECASTLE'S ACCEPTANCE OF THIS AGREEMENT.