

James W. Halter
305.476.7100 (Main)
305.476.5141 (Direct)
305.718.0638 (Facsimile)
jhalter@rascoklock.com

November 19, 2018

**BY EMAIL**
FINRA Dispute Resolution
One Liberty Plaza
165 Broadway, 27th Floor
New York, NY 10006
Attn: Leonie A. Feliciano, Senior Case Specialist

Re: *Castle Placement Group, LLC and Castle Placement, LLC v. Citadel Servicing Corp.*, FINRA DR No. 18-03722

Dear Ms. Feliciano:

On behalf of Claimants Castle Placement, LLC and Castle Placement Group, LLC ("Claimants" or "Castle"), we write in response to your letter dated October 30, 2018.

Your letter states that "[t]he pre-dispute agreement provided is between StoneCast[l]e Securities, LLC and Citadel Servicing Corp." We assume you are referring to the agreement attached to Claimants' Statement of Claim as Exhibit A (the "Agreement"). Respectfully, Exhibit A to Claimants' Statement of Claim is, in fact, an agreement providing for FINRA arbitration of the current dispute between Claimants and Citadel Servicing Corp.

Schedule IV to the Agreement, entitled "Arbitration of Controversies" states the following: "The Company [Citadel Servicing Corp.] and StoneCastle [Securities, LLC] agree that all controversies between the Company and StoneCastle **and/or any of their agents** arising out of or concerning this Agreement, the services provided hereunder, or any related matter shall be determined by arbitration in accordance with the rules of the Financial Industry Regulatory Authority (FINRA)." (Emphasis added). The Respondent Citadel Servicing Corp. is explicitly named in the arbitration clause and the claim for breach of the Agreement is obviously a controversy "arising out of" the Agreement.

The arbitration agreement also explicitly includes "any of [StoneCastle's] agents." Here, that is Castle. Castle formerly operated under the name StoneCastle Portfolio Advisors, LLC and,



by agreement between Castle and StoneCastle Partners, LLC[1], provided its services in the name of and by affiliation with StoneCastle Securities, LLC. I have attached that agreement hereto as Exhibit 1. The agreement calls for Ken Margolis and Richard Luftig to act on behalf of StoneCastle Portfolio Advisors (now known as Castle), and that if StoneCastle Portfolio Advisors, LLC (i.e., Castle) "activities creates revenue paid to StoneCastle Securities, LLC (because the capital raising contracts that [Castle] secures by you are **contracted through StoneCastle Securities, LLC**), or any other entity besides [Castle] then that revenue shall be treated the same in the calculation of [Castle] Net Profits **as if that revenue had been paid to [Castle]**." (Exhibit 1 at 2 (emphasis added)).

Pursuant to Exhibit 1, Castle secured the Agreement in the name of StoneCastle Securities, LLC and StoneCastle Securities, LLC provided the services called for under the Agreement through Castle, i.e., Castle was StoneCastle Securities LLC's agent. In fact, as stated in the Statement of Claim, pursuant to StoneCastle Securities' agreement to act as exclusive placement agent for Citadel, "Castle had over 1,000 communications with prospective investors by meeting, phone and/or email" pursuant to the Agreement. *See, e.g., Time Warner City Cable v. Adelphi Univ.*, 27 A.D.3d 551, 552, 813 N.Y.S.2d 114, 116 (2d Dep't 2006) ("The agent is a party who acts on behalf of the principal with the latter's express, implied, or apparent authority.") (quoting *Maurillo v. Park Slope U–Haul*, 194 A.D.2d 142, 146, 606 N.Y.S.2d 243 (2d Dep't 1993)).

Regardless, even if Castle was not a direct party to the arbitration clause of the Agreement by virtue of the contractual agency relationship, the fact that Castle is, at a minimum, an intended third-party beneficiary of the Agreement, still renders FINRA arbitration binding on Castle and Citadel Services Corp. "Under general contract principles, 'non-signatories [] fall within the scope of an arbitration agreement where that is the intent of the parties.'" *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 300 (S.D.N.Y. 1997) (quoting *McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771, 772 (2d Cir.1992) (per curiam)); *see also Interpool Ltd. v. Through Transp. Mut. Ins. Ass'n Ltd.*, 635 F. Supp. 1503, 1505 (S.D. Fla. 1985) ("The law is clear that a third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke."). "Thus, when a plaintiff who acquires rights under a contract as an **agent, third-party beneficiary**, or assignee subsequently 'bases [his] right to sue on the contract itself the provision requiring arbitration as a condition precedent to recovery must be observed.'" *Borsack*, 974 F. Supp. at 300 (quoting *Cheshire Place Assocs.*, 815 F. Supp. at 597) (emphasis added). *See also Spear, Leeds & Kellogg v. Cent. Life Assur. Co.*, 85 F.3d 21, 26 (2d Cir. 1996) (requiring NYSE member to arbitrate with a non-member because, "[w]hile it is true that the broker and defendants never directly contracted with one another, we have explained that the arbitration rules of a securities exchange are themselves 'contractual in nature'").

As properly alleged in the Statement of Claim, even if Castle is not a direct party to the Agreement, it is, at a minimum, an intended third-party beneficiary. The Agreement explicitly

---

[1] StoneCastle Partners, LLC was the parent of both Castle and StoneCastle Securities LLC—Castle and StoneCastle Securities, LLC were "sister" companies at the time.

requires that notices under the Agreement be delivered to Mr. Luftig, Castle's managing partner. In fact, the Agreement specifically stated that any rights, duties and obligations thereunder, "shall inure to the benefit of and be binding upon the successors, assigns ***and personal representatives*** of each of the parties hereto" which was intended to include Castle and Castle's officers. (Agreement at ¶ 16 (emphasis added)).

Thus, the Agreement does call for FINRA arbitration of Castle's claims against Citadel Servicing Corp. for breach of the Agreement. Please withdraw the deficiency notice and serve the Statement of Claim as soon as possible.

Respectfully submitted,
RASCO KLOCK PEREZ & NIETO

By: _____
James W. Halter
555 Fifth Avenue, 17th Floor
New York, New York 10017
(305) 476-7100
*Attorneys for Claimants*

# EXHIBIT 1

StoneCastle Partners, LLC
120 West 45th Street, 14th Floor
New York, New York 10036
212-354-6500 (T)
212-354-6565 (F)

January 31, 2010

Richard Luftig
527 Split Rock Road
Oyster Bay Cove, New York 11791

Kenneth Margolis
135 Elm Drive
Roslyn, New York 11576

Re: Terms of Employment

Dear Ken and Richard:

This letter confirms the terms of the employment of Ken Margolis ("Margolis") and Richard Luftig ("Luftig") at StoneCastle Portfolio Advisors, LLC ("SPA"). SPA is a wholly-owned subsidiary of StoneCastle Partners LLC. Each of you is paid a salary by SPA equal to the minimum wage under applicable law for full time employees.

In addition, each of you are entitled to participate in our retirement plan and all other employee benefit plans available universally to all SPA employees, consistent with the terms and conditions of those plans.

In addition, SPA will pay each of you a guranteed bonus equal to 50% of the SPA Net Profits (as defined below) (together you will receive 100% of the SPA Net Profits). "SPA Net Profits" means the revenue as accounted for on a cash and not accrual basis, of SPA arising from the capital raising assignments, trading revenue or other transactions secured by employees and consultants of SPA less expenses of or allocable to SPA (which, for the avoidance of doubt, includes all compensation of the employees and consultants of SPA) less the SPA Amount. "SPA Amount" equals 20% of the revenues of any transaction or trade secured by employees and consultants of SPA minus any expenses associated with the transaction including but not limited to professional fees, referral fees, due diligence costs and travel and entertainment expenses, or such other percentage of gross revenues of any transaction agreed to in writing between Margolis or Luftig, and SPA. For avoidance of doubt, if SPA activities creates revenue paid to StoneCastle Securities LLC (because the capital raising contracts that SPA secures by you are contracted through StoneCastle Securities, LLC), or any other entity besides SPA (including without limitation StoneCastle Partners LLC) then that revenue shall be treated the same in the calculation of SPA Net Profits as if that revenue had been paid to SPA.

The SPA Net Profits will be distributed to Margolis and Luftig (split equally) on the dates that Margolis and Luftig direct SPA in writing. The SPA Net Profits will be earned by Margolis and Luftig regardless of whether one or both are or are not employed by SPA regardless of when the SPA Net Profits are earned by or paid to SPA.

You agree that your employment by SPA is "at will," which means either SPA or you is free to terminate such employment upon 10 business days' written notice for any reason, or for no reason, provided, that you will be entitled to receive any SPA Net Profits with respect to transactions that are closed, contracted for, or in process prior to the termination of your employment. If the employment of Luftig and Margolis is terminated (by SPA or by Luftig and Margolis), Luftig and Margolis will have the option to transfer any contracts that have closed, contracted, or are in process to a new entity with which Luftig and Margolis are affiliated (the "New Entity"), subject to 1) approval from the SPA counterparty to the transaction; and 2) the New Entity agreeing in writing with StoneCastle Partners, LLC to pay the SPA Amount to StoneCastle Partners LLC or its affiliates as determined by StoneCastle Partners, LLC. In addition, each of you agree that SPA will not be liable to you in the

event that SPA distributes SPA Net Profits to either Margolis or Luftig in accordance with this Agreement (i.e., you agree that your only recourse will be to look to each other for any recourse) and each of you agree to indemnify and hold harmless SPA on a joint and several basis and to the fullest extent permitted by law for any claims or costs incurred by SPA in connection arising from distributions of SPA Net Profits that are made to Margolis or Luftig in accordance with this Agreement.

StoneCastle Partners LLC shall pay for or provide all ordinary, overhead, and back-office expenses of SPA, StoneCastle Partners LLC and StoneCastle Securities LLC, including without limitation payroll processing, accounting, human resources, legal, rent, office supplies, technology, computers, and office equipment, and such expenses shall not be included in the calculation of SPA Net Profits.

This letter supersedes any and all prior discussions and agreements between us with respect to the matters set forth herein. Please sign below if you accept the terms of this letter, and return a copy to me.

Sincerely,

StoneCastle Partners, LLC

By: _____
Matthew Mayers
Member

ACCEPTED: _____
Richard Luftig

_____
Kenneth Margolis

DATE: January 31, 2010