UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITADEL SERVICING CORPORATION,

                    Plaintiff,

      -against-

CASTLE PLACEMENT, LLC, CASTLE PLACEMENT
GROUP, LLC, KENNETH MARGOLIS, and RICHARD
LUFTIG,

                    Defendants.

---

Case No. 19 Civ. 3212 (KPF)

**ORAL ARGUMENT
REQUESTED**

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## CROSS-MOTION TO COMPEL ARBITRATION AND STAY THIS MATTER AND IN
## OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

James Halter, Esq.
Blaine Bortnick, Esq.
RASCO KLOCK PEREZ & NIETO, LLC
555 Fifth Avenue, 17th Floor
New York, New York 10017
Tel: (305) 476-7100
Fax: (305) 718-0639

**TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES ..................................................................................................... ii-iii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 2

ARGUMENT ................................................................................................................................ 7

      I.     Standard .......................................................................................................... 7

      II.    The Advisor Agreement Incorporates FINRA's Rules thus Requiring that
             FINRA's Director and Arbitrators Determine Arbitrability ................................ 8

      III.   The Parties' Dispute is Subject to Arbitration ..................................................... 11

      IV.   Citadel's Request for a Preliminary Injunction Should be Denied ....................... 16

CONCLUSION .......................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page No.**

**CASES**

*3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193 (8th Cir. 2008) ....................................................... 12

*Application of Herman Miller, Inc.*, No. 97 CIV. 7878 (SAS), 1998 WL 193213
    (S.D.N.Y. Apr. 21, 1998) .................................................................................................. 17

*Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293 (S.D.N.Y. 1997).......... 13,14,15

*Carvant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390 (E.D.N.Y. 2013) ......... 15

*Cheshire Place Assocs. v. W. of England Ship Owners Mut. Ins. Ass'n (Luxembourg)*,
    815 F. Supp. 593 (E.D.N.Y. 1993) ............................................................................... 13,15

*Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006) ................................................................. 15

*Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205 (2d Cir. 2005).................................................. 17

*Empire State Ethanol & Energy LLC v. BBI Int'l*, No. 1:08–CV–623 (GLS/DRH),
    2009 WL 790962 (N.D.N.Y. Mar 20, 2009)...................................................................... 14

*Gen. Patent Corp. v. Wi-Lan Inc.*, No. 11 CIV. 6585 JFK, 2011 WL 5865194
    (S.D.N.Y. Nov. 22, 2011) ................................................................................................. 16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) ..................................... 8

*India.com, Inc. v. Dalal*, 412 F.3d 315 (2d Cir. 2005)............................................................... 8,19

*Installed Bldg. Prod., LLC v. Cottrell*, No. 13-CV-1112-ASC, 2014 WL 3729369
    (W.D.N.Y. July 25, 2014) ................................................................................................. 13

*Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. General Electric Co.*,
    406 F.2d 1046 (2d Cir. 1969)............................................................................................. 8

*Interpool Ltd. v. Through Transp. Mut. Ins. Ass'n Ltd.*, 635 F. Supp. 1503
    (S.D. Fla. 1985)................................................................................................................. 15

*Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015)...................................................................... 8

*Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012) ..................................................... 7

*Maurillo v. Park Slope U–Haul*, 194 A.D.2d 142 (2d Dep't 1993)............................................. 13

*McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771 (2d Cir. 1992).............................................. 15

*Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184 (2d Cir. 2019) .................................................... 9,10

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983) ................................. 12

*Murray v. UBS Sec., LLC*, No. 12 CIV. 5914 KPF, 2014 WL 285093 (S.D.N.Y.
    Jan. 27, 2014) ........................................................................................................... 9,10

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614 (1985) ...................... 12

*PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996) ........................................................... 10

*Quest Motor Racing, Inc. v. Paramount Hosp. Mgmt., L.L.C.*, No. 3:04 CV 76 H,
    2007 WL 841936 (W.D.N.C. Mar. 19, 2007) ...................................................................... 12

*The Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11 (2d Cir. 2012) ............................... 17

*Roby v. Corp. of Lloyd's*, 996 F2d 1353 (2d Cir. 1993) .............................................................. 14

*Schneider v. Kingdom of Thailand,* 688 F.3d 68 (2d Cir. 2012) .................................................... 8

*Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39 (1997) .................................................. 10

*Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409 (2001) ................................................ 13

*Spear, Leeds & Kellogg v. Cent. Life Assur. Co.*, 85 F.3d 21 (2d Cir. 1996) ............................... 15

*Time Warner City Cable v. Adelphi Univ.*, 27 A.D.3d 551 (2d Dep't 2006) ................................ 13

*Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392 (2d Cir. 2018) ..................................... 10

*Wire Service Guild, Local 222, Newspaper Guild, AFL–CIO v. United Press Int'l, Inc.*,
    623 F.2d 257 (2d Cir. 1980) ................................................................................................ 8

**RULES AND STATUTES**

9 U.S.C. § 2 ................................................................................................................................. 7

FINRA Rule 13203 ................................................................................................................. 7,9,10

FINRA Rule 13413 ................................................................................................................... 9,10

Defendants Castle Placement, LLC, Castle Placement Group, LLC, Kenneth Margolis ("Margolis"), and Richard Luftig ("Luftig," and all Defendants collectively, "Castle" or "Defendants") respectfully submit this Memorandum of Law:

1)        In support of Defendants' cross-motion to compel arbitration and to stay this matter; and

2)        In opposition to Plaintiff's motion for a preliminary injunction.

The undisputed documents attached to the Amended Complaint, and the Amended Complaint itself, demonstrate that Defendants' claims against Plaintiff are arbitrable and there is no basis for the relief Plaintiff seeks here to avoid such an arbitration.

## PRELIMINARY STATEMENT

Plaintiff Citadel Servicing Corporation ("Citadel") entered into a private placement agreement with StoneCastle Portfolio Advisors, LLC in order to raise $100 million or more for Citadel. StoneCastle Portfolio Advisors successfully found at least one investor and Citadel reaped the benefits of at least tens of millions of dollars of investments, allowing it to significantly expand its operation. Citadel, however, never paid the agreed-upon fees for Castle's work – to **anyone**.

The breached contract states: "[Citadel] and StoneCastle agree that all controversies between the Company [Citadel] and StoneCastle **and/or any of their agents** arising out of or concerning this Agreement, the services provided hereunder, or any related matter shall be determined by arbitration in accordance with the rules of the Financial Industry Regulatory Authority (FINRA)." (Am. Compl. Ex. A at Schedule IV (Dkt. No. 17 at 26 of 33) (emphasis added)). Defendants, since they were agents of StoneCastle at all relevant times during the engagement, brought a FINRA arbitration seeking damages for Citadel's breach of contract.

1

Plaintiff contends that Defendants are not entitled to the benefit of the arbitration provision because they "have no legally cognizable relationship with SC Securities." (Am. Compl. at ¶ 22 (Dkt. No. 17 at 6 of 33)). What the Plaintiff fails to mention is that the very document attached to the Amended Complaint as Exhibit 1 of Exhibit B shows exactly that relationship. (Am. Comp. Ex. 1 of Ex. B (Dkt. No. 17 at 31 of 33)). To ensure compliance with FINRA rules, Castle had a contractual relationship with a FINRA-registered entity, StoneCastle Securities, LLC ("StoneCastle"). The relationship included that StoneCastle Securities, LLC held the licenses of Castle's principals and permitted Castle to enter into contracts in StoneCastle's name and for the Defendants to receive the resulting compensation. (Am. Compl. at Ex. 1 of Ex. B (Dkt. No. 17 at 31 of 33) ("For the avoidance of doubt, if SPA [now known as Defendant Castle Placement Group, LLC] activities creates revenue paid to StoneCastle Securities LLC (because the capital raising contracts that SPA secures by you are contracts through StoneCastle Securities LLC [such as the precise contract at issue here]), or any other entity besides SPA (including without limitation StoneCastle Partners LLC) then that revenue shall be treated the same in the calculation of New Profits as if that revenue had been paid to SPA.")).

Thus, Castle appropriately asserted its claims for compensation in the agreed-upon FINRA forum. Plaintiff should be ordered to participate in the contractually-required arbitration while the above-captioned matter is stayed so that the FINRA arbitrators can resolve this dispute as the parties agreed. For the same reasons, as Plaintiff's motion for a preliminary injunction stopping the required arbitration lacks merit, Plaintiff's motion should be denied.

## STATEMENT OF FACTS

Defendant (and arbitration Claimant) Castle Placement Group, LLC was previously named StoneCastle Portfolio Advisors, LLC. (Declaration of Richard Luftig, dated August 16,

2019 ("Luftig Decl.") Ex. 1).[1] On October 25, 2011, Plaintiff Citadel Servicing Corporation hired StoneCastle Portfolio Advisors, LLC (now Defendant Castle Placement Group, LLC), as Citadel's exclusive investment banking adviser. (Am. Compl. at ¶ 2; Ex. A at 1; Ex. B at 1 (Dkt. No. 17 at 1 of 33, 12 of 33).

Because Castle Placement Group, LLC's work as an investment banker sometimes required FINRA registration to receive compensation, from 2009 to 2015, Castle Placement Group, LLC, established a relationship with two companies: StoneCastle Partners, LLC and its FINRA-registered subsidiary, StoneCastle Securities, LLC. (Luftig Decl. ¶ 5). Through its principals – Luftig and Margolis – Castle Placement Group, LLC, contracted with StoneCastle Partners, LLC and StoneCastle Securities, LLC, to permit Castle Placement Group, LLC to enter into contracts in the name of StoneCastle Securities, LLC and for Castle Placement Group, LLC (and ultimately Luftig and Margolis) to receive the resulting compensation. (Am. Compl. Ex. 1 of Ex. B (Dkt. No. 17 at 31 of 33) (if StoneCastle Portfolio Advisors, LLC's (i.e., Castle Placement Group, LLC) "activities create[] revenue paid to StoneCastle Securities, LLC (because the capital raising contracts that [Castle] secures by you [Luftig and Margolis] are *contracted through StoneCastle Securities, LLC*), or any other entity besides [Castle] then that revenue shall be treated the same in the calculation of [Castle's] Net Profits *as if that revenue had been paid to [Castle]*." (emphasis added)). StoneCastle Portfolio Advisors (now Defendant

---

[1] Plaintiff claims that "[a]n examination of Delaware's public records indicates that the names do not match up." (Am. Compl. at ¶ 24(a) (Dkt No. 17 at 8 of 33)). This assertion is completely false. While Plaintiff does not articulate where it believes the name changes fail, the company registration numbers from the Delaware Secretary of Statement clearly match and demonstrate that Castle Placement Group, LLC previously operated under the name StoneCastle Portfolio Advisors, LLC. (Luftig Decl. Ex. 1). Regardless, Plaintiff, for good reason, does not appear to seriously challenge whether the name changes were effective.

Castle Placement Group, LLC) was dedicated to the efforts of Luftig and Margolis and sat in the corporate structure underneath StoneCastle Partners, LLC and as a sister company to StoneCastle Securities, LLC. . (Am. Compl. Ex. 1 of Ex. B (Dkt. No. 17 at 31 of 33)). Similar relationships are extremely common in the investment-banking industry and Citadel was completely aware of the relationship. (Luftig Decl. ¶ 5.) StoneCastle Portfolio Advisers is now named Castle Placement Group, LLC and is 100% owned by Luftig and Margolis. (Am. Compl. at ¶ 7 (Dkt. No. 17 at 2 of 33).

Luftig and Margolis are both registered with FINRA. (Luftig Decl. ¶ 5). Between 2009 and 2015, StoneCastle Securities, LLC held their licenses and Luftig and Margolis were agents of StoneCastle Securities, LLC. (Luftig Decl. ¶ 5). In 2015, Luftig, Margolis, and Castle Placement Group, LLC created their own company registered with FINRA, Defendant (and arbitration Claimant) Castle Placement, LLC. (Luftig Decl. ¶ 6). Castle Placement, LLC is a wholly-owned subsidiary of Castle Placement Group, LLC. (Am. Compl. at ¶ 6 (Dkt. No. 17 at 2 of 33)). Since 2015, Defendant Castle Placement, LLC has held the FINRA licenses of Luftig and Margolis.[2] (Luftig Decl. ¶ 6).

When Citadel hired StoneCastle Portfolio Advisors, LLC in October 2011, it signed an agreement with StoneCastle Securities, LLC (the "Advisor Agreement"). (Am. Compl. at Ex. A (Dkt. No. 17 at 12 of 33)). The Advisor Agreement called for StoneCastle to act as the exclusive placement agent in an attempt to identify and solicit investors for potential financing transactions with Citadel. (Am. Compl. Ex. A at 1 (Dkt. No. 17 at 12 of 33)).

---

[2] Castle Placement, LLC is a Claimant in the FINRA Arbitration to avoid any claim that Castle Placement Group, LLC, Margolis, and Luftig are not entitled to compensation without a FINRA member as a party. Castle Placement Group, LLC, Margolis, and Luftig have always maintained the appropriate affiliation with a FINRA member.

Some of the potential transactions Citadel sought may have required registration with FINRA. Thus, StoneCastle Securities, LLC was listed as the party to the agreement. But all parties understood that Castle Placement Group, LLC would complete the work and would be entitled to the compensation, through the contractual relationship that Castle Placement Group, LLC, Luftig, and Margolis had with StoneCastle Securities, LLC. (Am. Compl. Ex. 1 of Ex. B (Dkt. No. 17 at 31 of 33); Luftig Decl. ¶ 5).

Because StoneCastle Securities, LLC was listed as the party but would not be doing the actual work, the Advisor Agreement itself requires that all notices under the agreement be delivered to Richard Luftig at "rluftig@scpany.com" (Luftig's email address at StoneCastle Portfolio Advisors, LLC – now Castle Placement Group, LLC) and contained broad indemnification language that includes affiliates. (Am. Compl. at ¶ 19 and Ex. A at Schedule I (Dkt. No. 17 at 20 of 33 and 22 of 33)). Further, the Advisor Agreement specifically states that any rights, duties and obligations thereunder, "shall inure to the benefit of and be binding upon the successors, assigns **and personal representatives** of each of the parties hereto" which was intended to include Castle, Luftig and Margolis. (Am. Compl. Ex. A at ¶ 16 (Dkt. No. 17 at 19 of 33) (emphasis added)). Citadel knew Luftig and Margolis were fulfilling the contract and acting on behalf of StoneCastle Securities – in fact, Citadel even negotiated a purported amendment to the Advisor Agreement with Luftig. (Luftig Decl. Ex. 3 ("you [Luftig] have agreed on behalf of StoneCastle Securities LLC . . . ").

The Advisor Agreement had a term of 12 months. (Am. Compl. Ex. A at ¶ 15 (Dkt. No. 17 at 19 of 33)). The Advisor Agreement also required Citadel to pay compensation for transactions that closed for an additional 12 months after the term ended. (Am. Compl. Ex. A at ¶ 15 (Dkt. No. 17 at 19 of 33)). Citadel closed (at least) a transaction in June 2013 and one in

October of 2013. (Luftig Decl. ¶ 9). In breach of the Advisor Agreement, Citadel failed to pay compensation to Castle (or to StoneCastle Securities, LLC). (Luftig Decl. ¶ 10).

The Advisor Agreement contains a Schedule IV, entitled "Arbitration of Controversy" which includes the following: "The Company [Citadel] and StoneCastle agree that all controversies between the Company and StoneCastle **and/or any of their agents** arising out of or concerning this Agreement, the services provided hereunder, or any related matter shall be determined by arbitration in accordance with the rules of the Financial Industry Regulatory Authority (FINRA)." (Am. Compl. Ex. A at Schedule IV (Dkt. No. 17 at 26 of 33)). The agreement among Castle Placement Group, Luftig, Margolis, and StoneCastle Securities, LLC created just such an agency relationship by permitting Castle Placement Group, Luftig, and Margolis to enter into contracts in the name of StoneCastle Securities, LLC. (Am. Compl. Ex. 1 of Ex. B (Dkt. No. 17 at 31 of 33)).

Due to Citadel's breach, and pursuant to the arbitration provision, on October 26, 2018, Castle filed a Statement of Claim with FINRA to commence an arbitration, *Castle Placement Group, LLC and Castle Placement, LLC v. Citadel Servicing Corp.*, FINRA Arbitration No. 18-03722 (the "Arbitration"). (Am. Compl. at ¶ 1 (Dkt. No. 17 at 1 of 33)). On April 26, 2019, Defendants filed an Amended Statement of Claim adding Margolis and Luftig as additional Claimants. (Luftig Decl. Ex. 2.)

On October 30, 2018, FINRA requested that Castle clarify its standing to bring the FINRA Arbitration. (Am. Compl. Ex. B at 1 (Dkt. No. 17 at 27 of 33)). In response, on November 19, 2018, Castle submitted a letter explaining the contractual agency relationship between StoneCastle and Castle under the Advisor Agreement, or, at a minimum, that Castle was a third-party beneficiary. (Am. Compl. Ex. B at 1 (Dkt. No. 17 at 27 of 33)). Either status

permits Castle to assert claims pursuant to the Advisor Agreement, including the arbitration provision. (Am. Compl. Ex. B (Dkt. No. 17 at 27 of 33)). In fact, the arbitration provision explicitly states that it includes "agents" of StoneCastle. (Am. Compl. Ex. A at Schedule IV (Dkt. No. 17 at 26 of 33)).

FINRA Rule 13203(a) states that "The Director [of FINRA] may decline to permit the use of the FINRA arbitration forum if the Director determines that, given the purposes of FINRA and the intent of the Code, the subject matter of the dispute is inappropriate, or that accepting the matter would pose a risk to the health or safety of arbitrators, staff, or parties or their representatives. Only the Director may exercise the authority under this Rule."

Based on Castle's November 19, 2018 letter, FINRA's Director determined that, under Rule 13203, Castle's claims were appropriately presented to a FINRA arbitration panel and served Castle's Statement of Claim on Citadel. (Am. Compl. at ¶ 15 (Dkt. No. 17 at 4 of 33)).

As the parties explicitly called for arbitration under FINRA's rules to apply to any dispute arising or concerning the Advisor Agreement, Citadel should be compelled to arbitrate.

## **ARGUMENT**

### I.     Standard

The Federal Arbitration Act ("FAA") provides that an arbitration agreement in any "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 531 (2012). "[L]anguage excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear' and . . . arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute.'" *Wire Service Guild, Local 222, Newspaper Guild, AFL–CIO v. United Press Int'l, Inc.*, 623 F.2d 257, 260 (2d Cir. 1980) (quoting *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. General Electric Co.*, 406 F.2d 1046, 1048 (2d Cir. 1969)).

Even for claims that are wholly arbitrable and, thus, there is nothing to "stay" pending arbitration, the Second Circuit has recognized that compelling arbitration and staying the matter is the appropriate method to require arbitration. *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("while we recognize the impetus for a rule permitting dismissal, we conclude that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").

The parties do not dispute that the agreement exists or the language of the relevant agreement. Plaintiff's interpretation of the arbitration clause impermissible reads out and excludes terms included in the plain language. *See India.com, Inc. v. Dalal*, 412 F.3d 315, 323 (2d Cir. 2005) ("Effect and meaning must be given to every term of the contract, and reasonable effort must be made to harmonize all of its terms."). Based on the undisputed, plain language, the parties are required to arbitrate this dispute.

II.     The Advisor Agreement Incorporates FINRA's Rules Thus Requiring That FINRA's Director and Arbitrators Determine Arbitrability

Where the contract at issue clearly and unmistakably provides that an arbitrator will decide the arbitrability of a dispute, courts honor such a provision. *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 71 (2d Cir. 2012). Early this year, in similar circumstances, the Supreme Court made clear that there were no exceptions to the Federal Arbitration Act's requirement that such arbitration agreements, including agreements as to determinations of arbitrability, be enforced. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("We must interpret the [Federal Arbitration] Act as written, and the Act in turn requires that we

interpret the contract as written. When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

Here, the parties explicitly incorporated FINRA Rules into their arbitration provision. (Am. Compl. Ex. A at Schedule IV (Dkt. No. 17 at 26 and 33) ("**[Citadel] and StoneCastle agree that all controversies between [Citadel] and StoneCastle *and/or any of their agents arising out of or concerning this Agreement, the services provided hereunder, or any related matter*** shall be determined by arbitration in accordance with the rules of the Financial Industry Regulatory Authority (FINRA).") (emphasis added). That requires a two-step process to determine arbitrabilty. First, pursuant to Rule 13203, FINRA's Director makes an initial determination about arbitrability. Citadel admits that that initial review was conducted here and FINRA determined the parties' dispute is subject to arbitration. (Am. Compl. ¶¶ 11-15 (Dkt. No. 17 at 3-4 of 33)).

Second, FINRA Rule 13413 provides an additional check on arbitrability. *See, e.g.*, *Murray v. UBS Sec., LLC*, No. 12 CIV. 5914 KPF, 2014 WL 285093, at *13 (S.D.N.Y. Jan. 27, 2014) (FINRA Rule 13413, which provided that "[t]he panel has the authority to interpret and determine the applicability of all provisions under the Code[, s]uch interpretations are final and binding upon the parties," includes arbitrability).[3] The FINRA arbitrators themselves also

---

[3] While the Second Circuit recently expressed some nuance to this discussion of FINRA Rules of determining arbitrability, *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019), here, unlike the defendant's claims in *Bucsek*, the matter clearly arises out of the business matters of the parties, not events that occurred years later, and the arbitration clause here is intentionally broad. *Id.* (" Broad language expressing an intention to arbitrate all aspects of all disputes

determine whether the case is appropriately presented to them. *Id.*

The explicit incorporation of FINRA's rules, which necessarily includes Rules 13203 and 13413, is a clear, unmistakable agreement to have FINRA, not the Court, determine arbitrability of the claims here. *See Murray*, 2014 WL 285093, at *13 ("The JAMS and FINRA rules, explicitly incorporated into the respective agreements, empower an arbitrator to decide issues of arbitrability."); *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 47 (1997) ("[T]he language of the [NASD] Code itself commits all issues, including issues of arbitrability . . . to the arbitrators.") (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir. 1996)).

Furthermore, the fact that the arbitration provision is intentionally broad, including, "agents," "all controversies" and "any related matter," demonstrate an intent by the parties to have all matters, including arbitrability, to be decided by the arbitrators. *See, e.g.*, *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 394, 396 (2d Cir. 2018) (A clause expressing agreement "to arbitrate any dispute, claim or controversy that may arise between you and Wells Fargo Advisors, or a client, or any other person[, and] . . . giving up the right to sue Wells Fargo Advisors . . . in court concerning matters related to or arising from your employment" "demonstrate[d] the parties' clear and unmistakable intent to arbitrate all questions of arbitrability."); *PaineWebber*, 81 F.3d at 1199 (A contractual provision that "any and all controversies ... concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement . . . shall be determined by arbitration" and that "the parties

---

supports the inference of an intention to arbitrate arbitrability, and the clearer it is from the agreement that the parties intended to arbitrate the particular dispute presented, the more logical and likely the inference that they intended to arbitrate the arbitrability of the dispute."). Also, *Bucsek* did not address FINRA Rule 13203 nor a circumstance where the Director of FINRA had already exercised his power under that Rule to make the preliminary determination of arbitrability.

are waiving their right to seek remedies in court" was found to "evidence the parties' intent to arbitrate all issues, including arbitrability.") (emphases omitted).

Thus, under the plain language of the arbitration provision, no judicial determination is necessary as to whether Castle is sufficiently related to StoneCastle to also be bound by the arbitration provision. That decision will be made by the arbitrators.

As the arbitration provision here explicitly incorporates both StoneCastle's agents and FINRA's Rules and is intentionally broad to cover all matters, the parties intentionally chose to include the FINRA procedures to determine arbitrability here, rather than a court determination.

III.     The Parties' Dispute Is Subject to Arbitration

Even if the Court were to reach the merits, arbitration is still appropriate because the documents demonstrate that this matter is arbitrable.

Schedule IV to the Advisor Agreement, entitled "Arbitration of Controversies" states the following: "[Citadel] and StoneCastle [Securities, LLC] agree that all controversies between the [Citadel] and StoneCastle **and/or any of their agents** arising out of or concerning this Agreement, the services provided hereunder, or any related matter shall be determined by arbitration in accordance with the rules of the Financial Industry Regulatory Authority (FINRA)." (Am. Compl. Ex. A at Schedule IV (Dkt. No. 17 at 26 of 33) (emphasis added)). Citadel is explicitly named in the arbitration clause and the claim for breach of the Advisor Agreement is obviously a controversy "arising out of" the Advisor Agreement.

The arbitration provision also includes arbitration of controversies regarding "the services provided hereunder." (Am. Compl. Ex. A at Schedule IV (Dkt. No. 17 at 26 of 33)). That would necessarily include the work Defendants provided to Citadel and for which Defendants seek compensation – the 1,000+ communications completed by Castle to assist Citadel find investors

and its contacts with over 500 potential investors regarding financing Citadel, including arranging communications between Citadel and at least one of the ultimate investors. (Luftig Decl. ¶¶ 7-9; Ex. 2 at 2).[4]

Moreover, not only does the arbitration provision explicitly include the precise issue to be litigated – the services provided hereunder – it is intentionally even broader. The arbitration provision includes "or any related matter." (Am. Compl. Ex. A at Schedule IV (Dkt. No. 17 at 26 of 33)). Such a broad arbitration provision – both with respect to the parties and to the matters to be arbitrated – certainly includes the dispute here. *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) ("[T]he 'liberal federal policy favoring arbitration agreements,' . . . requires that a district court send a claim to arbitration when presented with a broad arbitration clause like the one here as long as the underlying factual allegations simply 'touch matters covered by' the arbitration provision.") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983) and *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625 n. 13 (1985)); *Quest Motor Racing, Inc. v. Paramount Hosp. Mgmt., L.L.C.*, No. 3:04 CV 76 H, 2007 WL 841936, at *1 (W.D.N.C. Mar. 19, 2007) ("It is undisputed that the Agreement contained a very broad arbitration clause providing that '[s]hould any dispute regarding the terms of this Agreement, **or any related matter**, arise between the parties, said dispute shall be resolved by binding arbitration'") (emphasis added, quotations omitted).

The arbitration provision further explicitly, and broadly, includes "StoneCastle and/or any of their agents." (Am. Compl. Ex. A at Schedule IV (Dkt. No. 17 at 26 of 33)). StoneCastle

---

[4] In the arbitration, Citadel has disclosed two financings by an investor identified by Castle. The extent to which Citadel received financing from, or entered into other transactions with, other investors and whether the investor Castle has already identified closed more than two financings, has not yet been disclosed by Citadel in discovery.

authorized Castle Placement Group, Luftig, and Margolis to enter into contracts in the name of StoneCastle Securities such as the Advisor Agreement. *See, e.g.*, *Time Warner City Cable v. Adelphi Univ.*, 27 A.D.3d 551, 552 (2d Dep't 2006) ("The agent is a party who acts on behalf of the principal with the latter's express, implied, or apparent authority.") (quoting *Maurillo v. Park Slope U–Haul*, 194 A.D.2d 142, 146 (2d Dep't 1993)). Defendants performed all its required services under the Advisor Agreement. (Luftig Decl. ¶¶ 7-9). Defendants have a contractual agency relationship with StoneCastle here and, thus, are subject to the arbitration provision. See, e.g., *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 300 (S.D.N.Y. 1997) ("Thus, when a plaintiff who acquires rights under a contract as an **agent, third-party beneficiary**, or assignee subsequently 'bases [his] right to sue on the contract itself the provision requiring arbitration as a condition precedent to recovery must be observed.'") (quoting *Cheshire Place Assocs. v. W. of England Ship Owners Mut. Ins. Ass'n (Luxembourg)*, 815 F. Supp. 593, 597 (E.D.N.Y. 1993)) (emphasis added).

In fact, Citadel itself in the Amended Complaint repeatedly refers to Luftig and Margolis as "employees." (*See, e.g.*, Am. Compl. (Dkt. No. 17 at 2 of 33) at ¶ 7). Employees are the prototypical agents of a company. *Installed Bldg. Prod., LLC v. Cottrell*, No. 13-CV-1112-ASC, 2014 WL 3729369, at *9 (W.D.N.Y. July 25, 2014) ("Employees, as agents of their employers, 'must act in accordance with the highest and truest principles of morality and, as fiduciaries, are forbidden from engaging in many forms of conduct permissible in a workaday world for those acting at arm's length.'") (quoting *Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409, 417 (2001)).

Citadel attempts to avoid this obvious conclusion by claiming that only "disclosed" agents of a signatory are protected by the arbitration agreement. First, this is a plain misreading

of *Roby v. Corp. of Lloyd's*, 996 F2d 1353, 1360 (2d Cir. 1993), which explicitly stated that "Courts in this and other circuits consistently have held that **employees or disclosed agents** of an entity that is a party to an arbitration agreement are protected by that agreement." *Id.* (emphasis added). Thus, the holding is not at all limited to "disclosed agents" – it at least includes employees and Citadel concedes that Luftig and Margolis are employees and "protected" by the arbitration provision. *Id.* Second, Luftig and his StoneCastle Portfolio Advisors, LLC email address both appear in the Advisor Agreement and were, thus, disclosed in the face of the document.[5] In fact, Citadel executed with Luftig – "on behalf of StoneCastle Securities" – an amendment to the Advisor Agreement. (Luftig Decl. Ex. 3). Third, *Roby* and its progeny only address non-signatories as defendants to claims and whether the agents are "protected" or not. Here, Defendants seek to use the arbitration provision affirmatively to bring claims against the signatory, Citadel. Citadel does not, and cannot, claim that it is not a signatory.[6]

---

[5] In fact, as alleged in the Statement of Claim, Citadel was fully aware of the roles of Luftig and Margolis and the affiliation with StoneCastle Securities, but that is a subject to be more fully explored at the underlying arbitration. (Luftig Decl. ¶ 5; Ex. 2 at 2).

[6] *Empire State Ethanol & Energy LLC v. BBI Int'l*, No. 1:08–CV–623 (GLS/DRH), 2009 WL 790962, at *4 (N.D.N.Y. Mar 20, 2009), cited by Plaintiff, actually supports Defendants, as the court in that case made a clear distinction between agents acting in the capacity of one entity while being sued related to another entity – such a relationship does not exist here. *Id.* at *4 n.4 ("the court rejects Empire's contention that it is also suing Kistner and Stahl in their capacity as BBI officials, as they have not been named in such capacity, **and would clearly be entitled to compel arbitration under *Roby* to the extent they were**. Let this serve as warning that Empire will not be allowed to avoid arbitration with BBI by litigating claims arising out of actions Kistner and Stahl took in their capacities as BBI officials.") (emphasis added). Regardless, it is yet another case where non-signatory defendants to claims, rather than plaintiffs (here arbitration claimants), sought arbitration and, thus, does not apply to the circumstances here.

At a minimum, Castle and Messrs. Luftig and Margolis were, and are, intended third-party beneficiaries of the Advisor Agreement which still requires FINRA arbitration here.[7] "Under general contract principles, 'non-signatories [] fall within the scope of an arbitration agreement where that is the intent of the parties.'" *Borsack*, 974 F. Supp. at 300 (quoting *McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771, 772 (2d Cir. 1992) (per curiam)); *see also Interpool Ltd. v. Through Transp. Mut. Ins. Ass'n Ltd.*, 635 F. Supp. 1503, 1505 (S.D. Fla. 1985) ("The law is clear that a third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke."). "Thus, when a plaintiff who acquires rights under a contract as an **agent, third-party beneficiary**, or assignee subsequently 'bases [his] right to sue on the contract itself the provision requiring arbitration as a condition precedent to recovery must be observed.'" *Borsack*, 974 F. Supp. at 300 (quoting *Cheshire Place Assocs.*, 815 F. Supp. at 597) (emphasis added). *See also Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("nonsignatories can enforce arbitration agreements as third party beneficiaries"); *Spear, Leeds & Kellogg v. Cent. Life Assur. Co.*, 85 F.3d 21, 26 (2d Cir. 1996) (requiring NYSE member to arbitrate with a non-member because, "[w]hile it is true that the broker and defendants never directly contracted with one another, we have explained that the arbitration rules of a securities exchange are themselves 'contractual in nature'"); *Carvant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 396 (E.D.N.Y. 2013) ("several district courts have held that a non-

---

[7] Without any citation or justification, Plaintiff asserts that "Defendants appear to have abandoned their argument that they are third-party beneficiaries to the Placement Agreement." (Pl.'s Mem. at 3 n.3). There is no basis for that statement. In fact, Amended Statement of Claim, just like the original Statement of Claim, explicitly states: "Also, even if it were not a direct party, Castle is an intended third-party beneficiary of the Agreement." (Luftig Decl. Ex. 2 at 3).

signatory third-party beneficiary suing for breach of contract is bound by an arbitration clause in the contract").

The Advisor Agreement explicitly requires that notices under the Agreement be delivered to Mr. Luftig, Castle's managing partner, at his Castle email address. (Am. Compl. Ex. A at ¶ 19 (Dkt. No. 17 at 20 of 33)). In fact, the Agreement specifically stated that any rights, duties and obligations thereunder, "shall inure to the benefit of and be binding upon the successors, assigns **and personal representatives** of each of the parties hereto" which was intended to include Castle and Castle's officers. (Am. Compl. Ex. A at ¶ 16 (Dkt. No. 17 at 19 of 33) (emphasis added)).

In the Amended Statement of Claim, Castle asserts claims based on agency and as a third-party beneficiary. (Luftig Decl. Ex. 2 at 3). Even if Castle is not a direct party to the Agreement, it is, at a minimum, an intended third-party beneficiary subject to FINRA arbitration. Accordingly, the FINRA arbitration provision should apply.

IV.   Citadel's Request for a Preliminary Injunction Should Be Denied

Citadel's motion for a preliminary injunction should be denied principally because it cannot demonstrate a "likelihood of success" or "serious questions" in favor of its claims. *Gen. Patent Corp. v. Wi-Lan Inc.*, No. 11 CIV. 6585 JFK, 2011 WL 5865194, at *2 (S.D.N.Y. Nov. 22, 2011) ("Preliminary injunctive relief is 'one of the most drastic tools in the arsenal of judicial remedies.' . . . Upon demonstration that legal remedies are inadequate to make a party whole, a movant may obtain injunctive relief upon the showing of: '(1) irreparable harm or injury, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in favor of the movant.'") (internal quotations and citations omitted).

Citadel's motion is just the inverse of Defendants' present cross-motion. As discussed above, the arbitration agreement calls for the arbitrators to determine arbitrability and, even if the Court were to reach the merits, the plain language of the arbitration provision dictates that Defendants' claims are subject to arbitration.

Citadel's reliance on case law discussing interpretation of circumstances where the party seeking arbitration is not a party to the arbitration clause is irrelevant because the arbitration provision here explicitly incorporates "agents," thus binding Defendants to the arbitration provision specifically. *See, e.g.*, *The Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11, 13 (2d Cir. 2012) (cited by Plaintiff) (finding it significant that arbitration provision stated "that a dispute 'shall be referred by either Party to arbitration' and that the 'Parties' shall be bound by the award," because "the arbitration clause does not clearly vest any right to invoke arbitration in a non-party" while, here, the provision specifically mentions "agents"); *Application of Herman Miller, Inc.*, No. 97 CIV. 7878 (SAS), 1998 WL 193213, at *4 (S.D.N.Y. Apr. 21, 1998) (cited by Plaintiff) (rejecting non-signatories motion to compel arbitration because "[b]ecause Worth cannot be considered an assignee of the Agreement, it cannot invoke its arbitration provision" – the contract explicitly rejected assignment while, here, the arbitration provision explicitly *includes* "agents"). *See also Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 209 (2d Cir. 2005) ("neither we nor the district court must reach the question whether Remote Solution is estopped from avoiding arbitration with Contec Corporation [a non-signatory] because, under the 1999 Agreement, the circumstances indicate that arbitration of the issue of arbitrability is appropriate. First, there is or was an undisputed relationship between each corporate form of Contec and Remote Solution. Secondly, Remote Solution signed the 1999 Agreement. Finally, the dispute at issue arose because the parties apparently continued to conduct themselves as subject to the 1999

Agreement regardless of change in corporate form. These factors demonstrate that a sufficient relationship existed between Contec Corporation and Remote Solution to permit Contec Corporation to compel arbitration.").

Citadel also attempts a sleight of hand by arguing: "In 2015, after separating from StoneCastle . . . , Luftig and Margolis created Castle Placement using it and its parent as vehicles to sue Citadel." (Pl.'s Mem. at 8). First, this statement intentionally ignores Castle Placement *Group*, LLC, which existed at the time of the Advisor Agreement and was affiliated with all of the StoneCastle entities and was part of the compensation structure. (Am. Compl. Ex. 1 of Ex. B (Dkt. No. 17 at 31 of 33)). Second, this statement ignores that Luftig and Margolis are now parties to this case and assert individual rights, in addition to their entities. Thus, the parties that existed in 2011 to 2013 are the ones asserting their rights to compensation for the work they performed.

Regardless, as Defendants have made clear, Castle Placement, LLC – the FINRA-registered entity created in 2015 – is only a party to avoid any claims that Defendants cannot receive compensation at the end of this litigation without having a FINRA member as part of the award and judgment. Defendants have always maintained the appropriate FINRA-affiliation, including at the time they performed the work for Citadel.

Finally, within its brief, Citadel makes an additional sleight of hand with the following assertion: "Being former employees or agents of a signatory to an arbitration agreement, however, does not entitle Luftig and Margolis to transplant the contractual right to arbitrate from the signatory to them or their new companies." (Pl.'s Mem. at 8). Whether Defendants are "former employees or agents of a signatory," which Plaintiff concedes in the statement, is the *only* issue presently before the Court.

Apparently, Plaintiff seeks to avoid arbitration by claiming that Defendants will ultimately lose their underlying claims of breach of contract and *quantum meruit*. That argument is wrong. Defendants performed a year of work with Plaintiff's full knowledge and acceptance and with the expectation of receiving the contractually-agreed upon compensation and, thus, have standing as aggrieved parties. (Luftig Decl. ¶¶ 5-9). The arbitrators, based on a fulsome record, including hundreds of emails and testimony from Defendants and Plaintiff, will make that determination.[8] The only issue to be decided by the Court at this time is who determines arbitrability and, if it is the Court, whether the plain language of the arbitration provision includes this dispute – it does.

Citadel argues as if the word "agents" does not exist in the arbitration provision. It does and it must be interpreted so as to give it meaning. *See India.com, Inc.*, 412 F.3d at 323 ("Effect and meaning must be given to every term of the contract, and reasonable effort must be made to harmonize all of its terms.").[9] Companies only act through their agents so the persons and entities that actually performed the work under the contract must be included among the intended agents. Here, that is Defendants. This is not a case about whether Defendants are sufficiently

---

[8] In addition, what Citadel refers to as an "anti-assignment clause" actually states the Advisor Agreement "shall inure to the benefit of and be binding upon the successors, assigns and personal representatives of, each of the parties hereto" and allows for the precise circumstances here. (Am. Compl. at ¶ 16 (Dkt. No. 17 at 19 of 33)). But this argument also exceeds the application of the arbitration provision and goes to the underlying merits. The fact that the arbitration provision explicitly includes "agents" renders the fact that the contract also passes to "successors, assigns, and personal representatives" of each of the parties – a position that also supports Defendants – a matter that will be taken up at the arbitration hearings, not here.

[9] Citadel's claim that the arbitration clause was intended to solely mean that a signatory could not avoid arbitration by suing only the agent finds no basis in the contractual language and would render the arbitration clause one-sided without any consideration on behalf of the agents. Such a lopsided interpretation should be rejected.

related to the signatories (although they are) since the arbitration provision explicitly makes agents subject to arbitration.

Accordingly, the Court should enforce the plain language of the arbitration provision and compel arbitration.

## **CONCLUSION**

For the reasons stated herein, Defendants Castle Placement Group, LLC, Castle Placement, LLC, Kenneth Margolis, and Richard Luftig respectfully request that the Court issue an order compelling Plaintiff to litigate in arbitration and staying this matter while the arbitration is pending and, in addition, denying Citadel's motion for a preliminary injunction.


Dated: New York, New York
        August 16, 2019

                                        RASCO KLOCK PEREZ & NIETO, LLC


                                        By: _____
                                            James W. Halter
                                            Blaine Bortnick
                                        555 Fifth Avenue, 17th Floor
                                        New York, New York 10017
                                        Tel: (305) 476-7100
                                        Fax: (305) 718-0639