UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITADEL SERVICING CORPORATION,      Case No. 19 Civ. 3212 (KPF)

        Plaintiff,

vs.

CASTLE PLACEMENT, LLC,
CASTLE PLACEMENT GROUP, LLC,
KENNETH MARGOLIS, and RICHARD
LUFTIG,

        Defendants.

_____/


**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION AND OPPOSITION TO
CROSS-MOTION TO COMPEL ARBITRATION**

T. Omar Malone
Michael R. Tein
**TEIN MALONE PLLC**
3059 Grand Avenue
Coconut Grove, Florida 33133
(305) 442-1101

*Attorneys for Citadel Servicing Corp.*

# TABLE OF CONTENTS

**Page(s)**

I.    OVERVIEW ..................................................................................... 1

II.   SUMMARY ..................................................................................... 1

III.  DEFENDANTS MISCHARACTERIZE THE FACTS AND EVIDENCE .......... 2

IV.   DISCUSSION .................................................................................. 4

    A.   The Court Should Preliminarily Enjoin the Arbitration So It Can
        Determine Whether Defendants' Claims Are Arbitrable ................ 4

        1.   Incorporation of FINRA's Rules Does Not Mandate
            Arbitration of Arbitrability ................................................... 5

        2.   The Arbitration Provision's Forum-Selection Clause Shows
            That the Parties Intended That a Court Would Decide
            Arbitrability ...................................................................... 5

        3.   There Is No Evidence That the FINRA Director Determined
            That Defendants' Claims Are Arbitrable ............................... 7

        4.   Whether Citadel Agreed to Arbitrate with Defendants Is a
            Separate Issue from Whether the Dispute Falls Within the
            Arbitration Provision .......................................................... 8

    B.   Defendants' Claims Are Not Arbitrable ...................................... 10

        1.   Defendants Lack Standing to Enforce the Placement
            Agreement as StoneCastle's Agents .................................. 10

        2.   Defendants Were Not Intended Beneficiaries to the
            Placement Agreement ....................................................... 12

V.    CONCLUSION ................................................................................ 16

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

ACE Capital Re Overseas Ltd. v. Central United Life Insurance Co.,
    307 F.3d 24 (2d Cir. 2002) ........................................................................ 8

Bank Julius Baer & Co., Ltd. v. Waxfield Ltd., 424 F.3d 278 (2d Cir. 2005) ..... 6

BNP Paribas Mortgage Corp. v. Bank of America, N.A.,
    778 F. Supp. 2d 375 (S.D.N.Y. 2011) ...................................................... 14

Borsack v. Chalk & Vermilion Fine Arts, Ltd., 974 F. Supp. 293
    (S.D.N.Y. 1997 ........................................................................................ 15

Carvant Financial LLC v. Autoguard Advantage Corp.,
    958 F. Supp. 2d 390 (E.D.N.Y. 2013) ...................................................... 15

Choctaw Generation Ltd. Partnership v. American Home Assurance Co.,
    271 F.3d 403 (2d Cir. 2001) .................................................................... 12

Church v. Gruntal & Co., 698 F. Supp. 465 (S.D.N.Y. 1988) ........................... 15

Comer v. Micor, Inc., 436 F.3d 1098, 1102 (9th Cir. 2006) ............................. 15

Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205 (2d Cir. 2005) .......... 8

Debary v. Harrah's Operating Co., 465 F. Supp. 2d 250 (S.D.N.Y. 2006) ........ 14

Discover Property & Casualty Insurance Co. v. TETCO, Inc.,
    932 F. Supp. 2d 304 (D. Conn. 2013) .................................................... 6-7

Empire State Ethanol & Energy LLC v. BBI International, 2009 WL 790962
    (N.D.N.Y. Mar. 20, 2009) ........................................................................ 12

Gerszberg v. Li & Fung (Trading) Ltd., 215 F. Supp. 3d 282 (S.D.N.Y. 2016) .. 12

Henry Schein Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524 (2019) ............ 4

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002) .............................. 8

In re Arbitration Between Keystone Shipping Co. and Chas. Kurz & Co., Inc.,
    782 F. Supp. 28 (S.D.N.Y. 1992) .............................................................. 11

In re Herman Miller, Inc., 1998 WL 193213 (S.D.N.Y. Apr. 21, 1998) ........ 13-14

**Page(s)**

**CASES**

Interpool Ltd. v. Through Transport Mutual Insurance Association Ltd.,
    635 F. Supp. 1503 (S.D. Fla. 1985)............................................................. 15

Israel v. Chabra, 2005 WL 589400 (S.D.N.Y. Mar. 11, 2005)............................ 8

John Street Leasehold LLC v. FDIC, 1996 WL 737196
    (S.D.N.Y. Dec. 24, 1996) ............................................................................ 13

McPheeters v. McGinn, Smith & Co., 953 F.2d 771 (2d Cir. 1992) ............ 14-15

Metropolitan Life Insurance Co. v. Bucsek, 919 F.3d 184 (2d Cir. 2019) ... 5-6, 7

Navana Logistics Ltd. v. TW Logistics, LLC,
    2016 WL 796855 (S.D.N.Y. Feb. 23, 2016) ........................................... 10-11

PaineWebber Inc. v. Bybyk, 81 F.3d 1193 (2d Cir. 1996) ............................ 5, 9

Pathak v. Molopo Energy Ltd., 2013 WL 5477594 (S.D.N.Y. Oct. 2, 2013)...... 11

Republic of Iraq v. BNP Paribas USA, 472 F. App'x 11 (2d Cir. 2012) .............. 9

Roby v. Corporation of Lloyd's, 996 F.2d 1353 (2d Cir. 1993) ................... 11-12

Spear, Leeds & Kellogg v. Central Life Assurance Co.,
    85 F.3d 21 (2d Cir. 1996) ...................................................................... 8, 15

Thomson-CSF, S.A. v. American Arbitration Association,
    64 F.3d 773 (2d Cir. 1995) .......................................................................... 12

TMS Entertainment Ltd. v. Madison Green Entertainment Sales, Inc.,
    2005 WL 476663 (S.D.N.Y. Feb. 28, 2005)................................................. 13

Veleron Holding, B.V. v. BNP Paribas SA, 2014 WL 12699263
    (S.D.N.Y. May 16, 2014) ............................................................................ 14

Wells Fargo Advisors, LLC v. Sappington, 884 F.3d 392 (2d Cir. 2018) ......... 8-9

**STATUTES**

N.Y. Estates, Powers & Trusts Law § 1-2.13 .................................................. 14

iii

**<u>OTHER AUTHORITIES</u>**

FINRA Rule 2040(a)....................................................................................... 3

FINRA Rule 13413 ........................................................................................ 5

## I.   OVERVIEW

Deciding Citadel's Motion for Preliminary Injunction and Defendants' Cross-Motion to Compel Arbitration involves a two-step process.  In Step 1, the Court must decide whether arbitrability is a question for the Court.  If the answer is yes, the Court should grant Citadel's Motion and enter a preliminary injunction.

The Court then should proceed to Step 2 and decide Count 1, which presents a second question: Are Defendants' claims arbitrable?  If the answer to that question is no, the Court then will proceed to Count 2 (in due course) and determine whether Defendants have standing to recover under the Placement Agreement.

Only if the Court determines at Step 1 that it lacks authority to decide arbitrability or determinates at Step 2 that Defendants' claims are arbitrable, should it grant Defendants' Motion.

## II.   SUMMARY

Our initial brief showed that, because Defendants  were not signatories to the Placement Agreement containing the arbitration provision, the Court must decide the arbitrability issue.  Defendants dismiss that authority out of hand, but they cite no apposite authority that supports their position.  Instead, they argue that the arbitrators must determine arbitrability because the arbitration provision incorporates FINRA's rules and mentions claims involving the parties' agents.  As discussed below and in our initial brief, that contention is wrong.

Defendants also argue that their claims are arbitrable, despite that they indisputably were neither parties nor signatories to the Placement Agreement.

They contend they're entitled to invoke the Agreement's arbitration provision because they were agents of the signatory/contracting party (StoneCastle Securities) or third-party beneficiaries to the Agreement.  But neither their evidence nor their case law supports their position.

Applying Second Circuit precedent to the facts, the Court should preliminarily enjoin the arbitration from proceeding and then decide whether Defendants' claims are arbitrable.  Because they are not, the Court should deny Defendants' Motion.

### III.  DEFENDANTS MISCHARACTERIZE THE FACTS AND EVIDENCE.

With neither the law nor the facts on their side, Defendants resort to mischaracterizing the facts and evidence.  First, contrary to their October 2018 arbitration claim,[1] Defendants now disingenuously assert that the Placement Agreement was between Citadel and StoneCastle Portfolio Advisors, LLC ("SPA").[2] The Agreement, however, indisputably was entered into by StoneCastle Securities, LLC ("StoneCastle"), and the Agreement nowhere mentions SPA.[3]

Second, Defendants assert that Castle Placement Group ("Castle Group") "contracted with StoneCastle Partners, LLC and StoneCastle Securities, LLC, to

---

[1] See Supplemental Declaration of Michael R. Tein in Support of Plaintiff's Motion for Preliminary Injunction and Opposition to Defendants' Motion to Compel Arbitration ("Tein Supp. Decl.") ¶ 2, Ex. 1 at 2 ("On or about October 25, 2011, Citadel signed an agreement with StoneCastle Securities, LLC . . . .").

[2] See Defendants' Memorandum of Law in Support of Cross-Motion to Compel Arbitration and Stay This Matter and in Opposition to Plaintiff's Motion for a Preliminary Injunction [ECF No. 28] ("Defs.' Mem.") at 1 (Citadel "entered into a private placement agreement with StoneCastle Portfolio Advisors, LLC . . . .").

[3] See Declaration of Michael R. Tein in Support of Plaintiff's Motion for Preliminary Injunction [ECF No. 24] ("Tein Decl.") Ex. A.

2

permit [Castle Group] to enter into contracts in the name of StoneCastle Securities, LLC and for [Castle Group] . . . to receive the resulting compensation."[4]  According to Defendants, "[s]imilar relationships are extremely common in the investment-banking industry and Citadel was completely aware of the relationship."[5]  This conclusory assertion lacks any supporting facts, including any basis for Luftig's contention concerning Citadel's alleged knowledge.  In any event, whether Luftig and Margolis' alleged arrangement with StoneCastle was common in the industry, is irrelevant to the issues before the Court.  But, if true, they presumably associated with StoneCastle because they were unwilling or unable to meet the onerous requirements to become registered broker-dealers.[6]  Furthermore, because Defendants were not registered broker-dealers, Citadel likely could not compensate them directly without violating FINRA Rule 2040(a), which generally prohibits the payment of commissions and fees to individuals who operate as unregistered broker-dealers.

Further, Defendants' evidence does not support their assertion that StoneCastle contracted with Castle Group to permit Castle Group to enter into contracts in StoneCastle's name.  To support this assertion, Defendants cite a January 2010 employment agreement between SPA on the one hand and Luftig and Margolis on the other, which provided that, for purposes of calculating Luftig's and Margolis' compensation, revenue paid to StoneCastle would be

---

[4] Defs.' Mem. at 3.

[5] Id. at 4 (citing Declaration of Richard Luftig [ECF No. 29] ("Luftig Decl. ) ¶ 5).

[6] See generally https://www.sec.gov/reportspubs/investor-publications/divisionsmarketregbdguidehtm.html.

3

treated as revenue paid to SPA.[7]   Contrary to Defendants' assertions, the employment agreement neither authorizes Castle Group – or any of the Defendants – to enter into contracts in the name of StoneCastle nor entitles any person or entity to step into StoneCastle's shoes to enforce any of its rights under any contract, let alone under the Agreement that StoneCastle entered into with Citadel nearly two years later.[8]

## IV.   DISCUSSION

### A.   The Court Should Preliminarily Enjoin the Arbitration So It Can Determine Whether Defendants' Claims Are Arbitrable.

Defendants do not dispute that an injunction is in the public interest, or that Citadel will suffer irreparable harm if the arbitration is not enjoined.[9]   They argue only that Citadel's Motion should be denied because Citadel cannot demonstrate a likelihood of success on the merits or serious questions in its favor.[10]   Respectfully, they are wrong.

The U.S. Supreme Court has consistently held that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."   Henry Schein Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 531 (2019) (internal quotation marks omitted).   There

---

[7] Pursuant to the employment agreement, Luftig and Margolis were entitled to receive only a portion of SPA's net profits arising from certain transactions.  See Am. Compl. [ECF No. 17] Ex. 1 to Ex. B.  Defendants conveniently omit this fact from their arbitration claim and Court filings.

[8] Although Defendants also contend that their non-contractual claims are arbitrable, they cite no authority showing that they may arbitrate such claims based on the Placement Agreement's arbitration provision.

[9] Just recently, the FINRA panel entered an order requiring Citadel to respond to discovery seeking information far beyond the scope of the asserted claims.

[10] Defs.' Mem. at 16-20.

is no such evidence here.  In fact, the Placement Agreement evidences a contrary intent.

### 1.    Incorporation of FINRA's Rules Does Not Mandate Arbitration of Arbitrability.

The Second Circuit recently rejected the argument – which Defendants press here – that FINRA Rule 13413 mandates arbitration of arbitrability:

> Rule 13413's support for an inference of contractual intent to confer arbitrability on the arbitrators is only moderate.  The provision empowering arbitrators "to interpret and determine the applicability of all provisions of the Code" makes clear that arbitrators do not lack authority to interpret the Code and determine the applicability of its provisions, but it <u>does not suggest that this power belongs exclusively to arbitrators</u>.

Metro. Life Ins. Co. v. Bucsek, 919 F.3d 184, 195 (2d Cir. 2019) (emphasis added), petition for cert. filed, -- U.S.L.W. ---- (U.S. Aug. 7, 2019) (No. 19-180).

As the Court explained, incorporating such rules "is not necessarily sufficient to support a clear and unmistakable inference of intent to arbitrate arbitrability when other aspects of the agreement argue powerfully against that inference."  Id.  As discussed below, other aspects of the Placement Agreement argue against arbitration of arbitrability.

### 2.    The Arbitration Provision's Forum-Selection Clause Shows That the Parties Intended That a Court Would Decide Arbitrability.

The Placement Agreement does not clearly state who should decide arbitrability.  Consequently, "the [Federal Arbitration] Act's presumption favoring arbitration is reversed so that the court will ordinarily decide the question." PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996).  Where, as here, the arbitration provision does not "contain language <u>directly addressing</u> the question of who should decide the arbitrability of the dispute, the courts are

required . . . to examine other provisions of the agreement to interpret the contractual intent of the parties on that issue." <u>Bucsek</u>, 919 F.3d at 194 (emphasis added).

While the Placement Agreement's arbitration provision states that all controversies "arising out of or concerning this Agreement, the services provided hereunder, or any related matter shall be determined by arbitration," it also includes a forum-selection clause, providing that "[a]ny claim or action arising under this Agreement and <u>not subject to arbitration</u> in accordance with this section . . . may be brought in the state or federal courts located in the Borough of Manhattan in The City of New York, and [Citadel] hereby irrevocably consents to and accepts the exclusive jurisdiction of such courts."[11]    This clause evidences the parties' understanding that not every dispute arising under the Agreement would be arbitrated, and their intent that a New York court would determine arbitrability.  See <u>Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.</u>, 424 F.3d 278, 284 (2d Cir. 2005) ("[The Forum Selection Clause] may be read, consistent with the Arbitration Agreement, in such a way that [the parties] are required to arbitrate their disputes, but that to the extent the [plaintiff] files a suit in court in New York—for example, . . . to challenge the validity or application of the arbitration agreement—[the defendant] will not challenge either jurisdiction or venue."), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Granite Rock Co.</u> <u>v. Int'l Bhd. of Teamsters</u>, 561 U.S. 287 (2010); <u>Discover Prop. & Cas. Ins. Co. v.</u> <u>TETCO, Inc.</u>, 932 F. Supp. 2d 304, 310 (D. Conn. 2013) ("[T]he two contract

---

[11] Tein Decl. Ex. A, Sched. IV (emphasis added).

clauses could be interpreted in such a way that they do not conflict—i.e., under the forum selection clause in the Indemnity Agreement, the Court has personal jurisdiction over [defendant] for the purpose of determining whether the arbitration clause in the Letter Agreement is valid and arbitration should be compelled.").

### 3. There Is No Evidence That the FINRA Director Determined That Defendants' Claims Are Arbitrable.

Defendants also assert that, as part of a fictional "two-step process,"[12] "FINRA's Director determined that, under Rule 13203, Castle's claims were appropriately presented to a FINRA arbitration panel."[13]  This assertion is based on the fact that, after the Castle Entities submitted their letter regarding jurisdiction in November 2018, FINRA served the claim on Citadel.[14]  But there is no evidence that FINRA's Director ever considered – let alone determined – that Defendants' claims are arbitrable.  Cf. Bucsek, 919 F.3d at 188 ("By order of the Director of the FINRA Office of Dispute Resolution on December 1, 2016, FINRA denied MetLife's application for dismissal.").  In fact, when Citadel later advised FINRA that Defendants' claims are not arbitrable, FINRA responded that it would "continue to process the . . . arbitration unless or until [it] receive[s] a court order staying the matter."[15]  Thus, FINRA implicitly recognized that a court should decide arbitrability.

---

[12] Defs.' Mem. at 9.

[13] Id. at 7.

[14] Id.

[15] See Tein Supp. Decl. ¶ 3, Ex. 2.

> **4.    Whether Citadel Agreed to Arbitrate with Defendants Is a Separate Issue from Whether the Dispute Falls Within the Arbitration Provision.**

Lastly, Defendants argue that the broad language of the arbitration provision shows an intent to arbitrate arbitrability.  In so doing, they erroneously conflate two distinct issues: whether Citadel agreed to arbitrate with Defendants and whether this dispute falls within the scope of the arbitration provision.  "[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (internal quotation marks omitted). Just because one signatory has agreed to arbitrate with the other, that "does not mean that it must arbitrate with any non-signatory." Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205, 209 (2d Cir. 2005).

The Second Circuit requires a two-part test for determining arbitrability: a court first must determine whether the parties agreed to arbitrate disputes at all; if so, the court then must determine whether the dispute at issue falls within the scope of the arbitration agreement.  Israel v. Chabra, 2005 WL 589400, at *2 (S.D.N.Y. Mar. 11, 2005) (Chin, J.) (citing ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002)).  "These two inquiries are separate and independent." Spear, Leeds & Kellogg v. Cent. Life Assurance Co., 85 F.3d 21, 25 (2d Cir. 1996).

The two cases Defendants cite are inapposite because, in each, the Court applied only the second part of the test since the parties indisputably had agreed to arbitrate their disputes.  See Wells Fargo Advisors, LLC v. Sappington, 884 F.3d 392, 394 (2d Cir. 2018) ("The Employees' employment contracts contained

8

broad arbitration clauses governed by Missouri law."); Bybyk, 81 F.3d at 1195 ("[T]he parties executed a client agreement which contained an arbitration clause."); cf. Israel, 2005 WL 589400 at *2 ("Plaintiffs refuse to arbitrate based on the first step of the test, arguing that [defendant] cannot rely on an arbitration agreement to which he was not a signatory . . . .").

In addition to citing no authority that supports their position, Defendants fail to distinguish our cases, which establish that the Court should determine arbitrability.[16]  Defendants argue that our cases are irrelevant because, unlike here, the arbitration provisions in those cases did not specifically mention disputes involving "agents."  But the arbitration provision simply indicates that, consistent with settled case law,[17] StoneCastle and Citadel agreed to arbitrate disputes that one signatory might bring against the other signatory and its agents.  The arbitration provision does not "clearly vest any right to invoke arbitration in a non-party." Republic of Iraq v. BNP Paribas USA, 472 F. App'x 11, 13 (2d Cir. 2012).  And Defendants cite no authority to support their assertion that the mere reference to "agents" in the arbitration provision constitutes "clear and unmistakable evidence" that the parties intended to arbitrate arbitrability.

In sum, there is no "clear and unmistakable evidence" that the parties intended to arbitrate arbitrability, and in fact the Agreement's forum-selection

---

[16] See Plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction [ECF No. 23] ("Pl.'s Mem.") at 6-8.

[17] See Pl.'s Mem. at 11-12.

clause indicates otherwise.  Accordingly, the Court should grant Citadel's Motion and preliminarily enjoin the arbitration from proceeding.

**B.   Defendants' Claims Are Not Arbitrable.**

In their letter requesting a pre-motion conference concerning a proposed 12(b)(6) motion, Defendants asserted that their claims are arbitrable because the Placement Agreement's arbitration provision is broad and explicitly refers to disputes involving the parties' agents.[18]  They also now argue that they're entitled to invoke the arbitration provision because they were intended third-party beneficiaries to the Agreement.  Again, however, the case law does not support their position.

**1.   Defendants Lack Standing to Enforce the Placement Agreement as StoneCastle's Agents.**

Even if any of Defendants could be deemed (former) agents of StoneCastle, that does not entitle them to sue on the contract.  Under New York law, "an agent cannot maintain an action on a contract in his own name on behalf of his principal unless he is a party to the contract, a transferee, or a holder of an interest in the contract."  Navana Logistics Ltd. v. TW Logistics, LLC, 2016 WL 796855, at *7 (S.D.N.Y. Feb. 23, 2016) (Castel, J.) (quotation marks omitted). For instance, in Navana Logistics, the court found that the plaintiff, who claimed to be an agent for disclosed principals, could not maintain a claim for breach of contract because it "fail[ed] to plausibly allege that it entered into any contract with [the defendants] or that [it], as agent of the [principals], was an assignee of

---

[18] See letter from James Halter to the Hon. Katherine Polk Failla (June 10, 2019) [ECF No. 14].

any contract or that it had authority from the [principals] to sue on their behalf." Id. at *6. Likewise, here, even if any of Defendants were StoneCastle's agents, they cannot enforce the Placement Agreement in their own names.

As noted in section III above, Defendants now claim that Citadel entered into the Placement Agreement with SPA (which subsequently became Castle Group). Even if that were true (it is not) and SPA had signed the Agreement on behalf of its principal StoneCastle, that would not entitle Castle Group to enforce the arbitration provision. Likewise, Luftig's having "executed" an "amendment" to the Agreement on StoneCastle's behalf does not make him a party to the Agreement. "Signing an arbitration agreement as an agent for a disclosed principal is not sufficient to render the agent a party to the arbitration clause." In re Arbitration Between Keystone Shipping Co. and Chas. Kurz & Co., Inc., 782 F. Supp. 28, 32 (S.D.N.Y. 1992) (Edelstein, J.) (finding that agent who signed an agreement for its disclosed principal was "not a party to the agreement and ha[d] no authority to enforce the arbitration clause").

Nor does the fact that Luftig was named in the Agreement as one of the persons to whom notices under the Agreement were to be delivered, entitle him to enforce the arbitration provision. See generally Pathak v. Molopo Energy Ltd., 2013 WL 5477594, at *6 (S.D.N.Y. Oct. 2, 2013) (Furman, J.) (finding that agent who signed agreement as a witness could not enforce agreement's arbitration provision).

Again, Defendants cite no authority that supports their contention that they're entitled to compel arbitration under an agency theory. While they argue in passing that their position is supported by Roby v. Corporation of Lloyd's, 996

F.2d 1353, 1360 (2d Cir. 1993), and Empire State Ethanol & Energy LLC v. BBI International, 2009 WL 790962, at *4 n.4 (N.D.N.Y. Mar. 20, 2009), they acknowledge that neither case applies because the parties seeking to compel arbitration in both cases were non-signatory defendants rather than non-signatory claimants (as here).[19]  Although the Second Circuit has identified five theories, including agency, under which a signatory can compel a non-signatory to arbitrate, Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776-79 (2d Cir. 1995), none of those theories apply when a non-signatory seeks to enforce an arbitration clause.  Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co., 271 F.3d 403, 406 (2d Cir. 2001).  Thus, as Defendants concede, cases in which courts have found non-signatory agents to be bound by arbitration provisions in their principals' agreements, are inapposite.  And Defendants do not cite a single case in which a court found that a non-signatory agent was entitled to invoke an arbitration provision in its principal's contract. As our case law shows, they cannot do so.

> **2.   Defendants Were Not Intended Beneficiaries to the Placement Agreement.**

Defendants alternatively claim to be third-party beneficiaries to the Agreement.  Second Circuit decisions "underscore the judicial duty, at the threshold, to determine whether a non-signatory to an agreement is in fact a third-party beneficiary entitled to compel a signatory to arbitrate claims thereunder."  Gerszberg v. Li & Fung (Trading) Ltd., 215 F. Supp. 3d 282, 290 (S.D.N.Y. 2016) (Engelmayer, J.).  Under New York law, a contract does not confer

---

[19] See Defs.' Mem. at 13-14 & n6.

third-party beneficiary rights unless "it appears that no party other than the third party can recover if the promisor breaches the contract or . . . the contract clearly demonstrates an intent to allow enforcement by a third party." John Street Leasehold LLC v. FDIC, 1996 WL 737196, at *9 (S.D.N.Y. Dec. 24, 1996) (Koeltl, J.) (citing cases).  Although the contract need not specifically mention the third party, "the parties' intent to benefit a third party must be shown on the face of the agreement.  Absent such intent, the third party is merely an incidental beneficiary with no right to enforce the contract." TMS Entm't Ltd. v. Madison Green Entm't Sales, Inc., 2005 WL 476663, at *5 (S.D.N.Y. Feb. 28, 2005) (quotation marks & citations omitted) (emphasis added).

Rather than showing an intent to benefit Defendants, the Placement Agreement contains two provisions that demonstrate a contrary intent.  First, the Agreement contains a merger clause, stating that the Agreement "constitutes the entire agreement of the parties . . . and supersedes all prior written or oral and all contemporaneous oral agreements, understandings and negotiations with respect to the subject matter hereof."[20]  Second, the Agreement contains an anti-assignment clause, providing that the Agreement "and any rights . . . hereunder may not be . . . assigned, in any way, in whole or in part, including by operation of law, without the prior written consent of . . . each of the parties hereto."[21]  Courts in the Second Circuit have found that similar provisions evince

---

[20] Tein Decl. ¶ 5, Ex. A ¶ 16.

[21] Tein Decl. ¶ 4, Ex. A ¶ 16.  Because StoneCastle never obtained Citadel's consent to assign the right to arbitrate to Defendants, they possess no such right.  See generally In re Herman Miller, Inc., 1998 WL 193213, at *4 (S.D.N.Y. Apr. 21, 1998) (Scheindlin, J.) (finding that non-signatory who claimed to be

an intent <u>not</u> to confer third-party beneficiary status.  See <u>Veleron Holding, B.V. v. BNP Paribas SA</u>, 2014 WL 12699263, at *21-22 (S.D.N.Y. May 16, 2014) (McMahon, J.) (merger and anti-assignment provisions); <u>BNP Paribas Mortg. Corp. v. Bank of Am., N.A.</u>, 778 F. Supp. 2d 375, 410 (S.D.N.Y. 2011) (Sweet, J.) (merger and anti-assignment provisions); <u>Debary v. Harrah's Operating Co.</u>, 465 F. Supp. 2d 250, 267-68 (S.D.N.Y. 2006) (McMahon, J.) (merger clause).  Thus, the Agreement refutes Defendants' claim that they are intended third-party beneficiaries.

In a novel argument, Defendants suggest that the Agreement's inurement clause confers third-party beneficiary status on them as alleged "personal representatives" of StoneCastle.  But, of course, "personal representative" is a legal term of art, which means "a person who has received letters to administer the estate of a decedent."  <u>N.Y. Estates, Powers & Trusts Law § 1-2.13</u> (McKinney 2019).  Thus, Defendants are not "personal representatives" of StoneCastle as a matter of law.

A person or entity that is not an intended third-party beneficiary to an agreement cannot enforce the agreement's arbitration provision, even if they are agents of a signatory.  See, <u>e.g.</u>, <u>McPheeters v. McGinn, Smith & Co.</u>, 953 F.2d 771, 773 (2d Cir. 1992) (finding that signatory's stockbroker – <u>i.e.</u>, agent – was not entitled to enforce arbitration clause because signatories did not intend to benefit broker, observing that the signatories "entered into the Agreement for

---

assignee of agreement could not invoke arbitration provision because contractual conditions of assignment were not met), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Herman Miller, Inc. v. Worth Capital, Inc.</u>, 173 F.3d 844 (2d Cir. 1999) (unpublished table decision).

14

their own mutual benefit, not for the purpose of conferring a benefit on [the broker]"); Church v. Gruntal & Co., 698 F. Supp. 465, 466 (S.D.N.Y. 1988) (Griesa, J.) (finding that signatory's stockbroker – i.e., agent – was not third-party beneficiary to margin agreement containing arbitration clause between customer and clearing broker).

Defendants' cited cases are readily distinguishable from the instant dispute:

- Borsack v. Chalk & Vermilion Fine Arts, Ltd., 974 F. Supp. 293, 300 (S.D.N.Y. 1997) (Parker, J.) (finding that plaintiff who was expressly identified as beneficiary to contract would "be compelled to abide by the arbitration provision therein");

- Interpool Ltd. v. Through Transp. Mut. Ins. Ass'n Ltd., 635 F. Supp. 1503, 1505 (S.D. Fla. 1985) (finding that owners of equipment leased to shipping company were bound by arbitration clause in insurance contract between shipping company and insurer because they claimed third-party beneficiary status under contract);

- Comer v. Micor, Inc., 436 F.3d 1098, 1102 (9th Cir. 2006) (finding that employee benefit plan participant could not be compelled to arbitrate based on third-party beneficiary theory because there was no evidence that signatories had intended that contract would benefit plan participants or that participants would have right to sue under contract);

- Spear, Leeds & Kellogg, 85 F.3d at 26 (finding that, despite absence of arbitration agreement, insurer could compel NYSE member to arbitrate under NYSE arbitration rule that "explicitly provides that a 'demand' by a non-member is an alternative basis for arbitration, separate from a 'duly executed and enforceable written agreement' providing for arbitration");

- Carvant Fin. LLC v. Autoguard Advantage Corp., 958 F. Supp. 2d 390, 397 (E.D.N.Y. 2013) (finding that non-signatory plaintiff was estopped from denying obligation to arbitrate and declining to determine whether plaintiff was third-party beneficiary to contract).

Defendants' third-party beneficiary theory thus also finds no support in the law, and they cannot compel arbitration on that basis either.

15

## V.    **CONCLUSION**

Because Defendants indisputably are not signatories to the Placement Agreement, the Court should grant Citadel's Motion and preliminary enjoin the arbitration from proceeding so that it can decide the arbitrability issue.  The Court then should proceed to the second step of the analysis.  Under well-established case law, Defendants' claims are not arbitrable because (1) even if Defendants were StoneCastle's agents, they lack standing to enforce the arbitration provision in the Placement Agreement and (2) Defendants cannot compel arbitration under a third-party beneficiary theory.  The Court therefore should deny Defendants' Motion to Compel Arbitration.

Dated: September 10, 2019

> Respectfully submitted,
>
> **TEIN MALONE PLLC**
> 3059 Grand Avenue
> Coconut Grove, Florida 33133
> (305) 442-1101
>
> By: /s/ *T. Omar Malone*
>     T. OMAR MALONE
>     omalone@teinmalone.com
>     MICHAEL R. TEIN
>     (admitted *pro hac vice*)
>     tein@teinmalone.com
>
> *Attorneys for Citadel Servicing Corp.*

16