UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITADEL SERVICING CORPORATION,

                              Plaintiff,

                    -v.-

CASTLE PLACEMENT, LLC, CASTLE
PLACEMENT GROUP, LLC, KENNETH
MARGOLIS, and RICHARD LUFTIG,

                              Defendants.

19 Civ. 3212 (KPF)

**<u>OPINION AND ORDER</u>**

KATHERINE POLK FAILLA, District Judge:

     Plaintiff Citadel Servicing Corporation ("Citadel") entered into a contract

(the "Placement Agreement") with non-party StoneCastle Securities, LLC

("StoneCastle"). The Placement Agreement contained an arbitration provision

(the "Arbitration Provision") requiring that Citadel and StoneCastle "and/or any

of their agents" arbitrate their disputes with the Financial Industry Regulatory

Authority ("FINRA"). Defendants in this action — corporate defendants Castle

Placement LLC and Castle Placement Group, LLC (together, "Castle"), and

individual defendants Kenneth Margolis and Richard Luftig (together with

Castle, "Defendants") — filed a statement of claim with FINRA seeking to

arbitrate a dispute about monies ostensibly owed to them for services provided

under the Placement Agreement. After initially questioning Castle's right to

enforce the Arbitration Provision, FINRA allowed Castle, Luftig, and Margolis to

proceed in arbitration. Citadel then filed the instant action seeking a

declaratory judgment that Defendants could not enforce the Arbitration

Provision. Additionally, Citadel moved for a preliminary injunction enjoining

Defendants and FINRA from proceeding with the arbitration. Defendants then cross-moved for a court order to compel arbitration. For the reasons explained below, Citadel's motion is denied and Defendants' motion is granted.

## BACKGROUND[1]

### A.    Factual Background

Citadel is a lender and servicer of non-prime home mortgage loans that is based in Irvine, California. In October 2011, Citadel entered into the Placement Agreement with StoneCastle. (Tein Decl. ¶ 2, Ex. A). Under the Placement Agreement, Citadel appointed StoneCastle to act for one year as its "exclusive agent … [for] soliciting potential investors to make investments" in Citadel. (Compl., Ex. A at 1).

Paragraph 18 of the Placement Agreement states:

> This Agreement and any claim or dispute of any kind or nature whatsoever arising out of, or relating to, this Agreement or the Placement Agent's engagement hereunder, directly or indirectly (including any claim concerning services provided pursuant to this Agreement), shall be governed and construed in accordance with the laws of the State of New York,

---

[1]   The facts contained in this Opinion are drawn principally from Plaintiff's Amended Complaint ("Compl." (Dkt. #17)), which is the operative pleading in this case; the Declaration of Michael R. Tein in Support of Plaintiff's Motion for a Preliminary Injunction ("Tein Decl." (Dkt. #24)), including the exhibits thereto; the Declaration of Richard Luftig ("Luftig Decl." (Dkt. #29)), including the exhibits thereto; and the Supplemental Declaration of Michael R. Tein in Support of Plaintiff's Motion for a Preliminary Injunction and Opposition to Defendants' Motion to Compel Arbitration ("Tein Reply Decl." (Dkt. #33)), and the exhibits thereto. In the Background section of the Court's Opinion, the Court relies on facts and exhibits submitted by the parties in support of their respective motions in order to explain how the instant motions arose. However, in the Discussion section, the Court relies on the Placement Agreement, which is attached to the Complaint. (*See* Compl., Ex. A).

For ease of reference, the Court refers to the parties' briefing as follows: Plaintiff's opening brief as "Pl. Br." (Dkt. #23); Defendants' cross-motion and opposition brief as "Def. Br." (Dkt. #28); Plaintiff's reply brief as "Pl. Reply" (Dkt. #32); and Defendants' reply brief as "Def. Reply" (Dkt. #34).

Borough of Manhattan. Any rights to trial by jury with respect to any claim, action or proceeding, directly or indirectly, arising out of, or relating to, this Agreement or the Placement Agent's engagement hereunder are waived by the Placement Agent and the Company, on its own behalf and on behalf of Newco. Notwithstanding anything to the contrary contained herein, the parties hereby agree to the terms of the Arbitration of Controversies section included in Schedule IV herein.

(Compl., Ex. A at ¶ 18). Schedule IV to the Placement Agreement, entitled

"Arbitration of Controversies," states:

This Agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement the parties agree as follows:

(A) All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

(B) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

(C) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

(D) The arbitrators do not have to explain the reason(s) for their award.

(E) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

(F) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

(G) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.

> [Citadel] and StoneCastle agree that all controversies between [Citadel] and StoneCastle and/or any of their agents arising out of or concerning this Agreement, the services provided hereunder, or any related matter shall be determined by arbitration in accordance with the rules of the Financial Industry Regulatory Authority (FINRA). Any such arbitration proceeding shall be held in the Borough of Manhattan in The City of New York. The award of the arbitrator or a majority of the arbitrators shall be final. Judgement on the award rendered may be entered in any state or federal court having jurisdiction.
>
> **Applicable Law; Jurisdiction; Jury Waiver**
>
> This Agreement shall be governed by and construed in accordance with the laws of the State of New York. Any claim or action arising under this Agreement and not subject to arbitration in accordance with this section may be brought in the state or federal courts located in the Borough of Manhattan in The City of New York and [Citadel] hereby irrevocably consents to and accepts the exclusive jurisdiction of such courts. [CITADEL] HEREBY WAIVES THE RIGHT TO A JURY TRIAL IN ANY SUCH ACTION AND UNDERSTANDS THAT SUCH WAIVER IS A CONDITION TO STONECASTLE'S ACCEPTANCE OF THIS AGREEMENT.

(*Id.* at Schedule IV).

On October 26, 2018, Castle filed a statement of claim (the "Statement of Claim") against Citadel with FINRA. (Tein Decl. ¶ 8; Tein Reply Decl., Ex. 1). In relevant part, the Statement of Claim outlined the bases for Castle's entitlement to bring the FINRA arbitration against Citadel. (*See* Tein Reply Decl., Ex. 1). In this regard, Castle explained that the Arbitration Provision "itself explicitly includes StoneCastle's agents, which includes Castle, and the [Placement] Agreement bound StoneCastle's 'successors, assigns, and personal representatives,' which also includes Castle — Castle was a wholly-owned

4

subsidiary of StoneCastle Partners, and acted through StoneCastle at the time." (*Id.*).

Castle then explained the evolution of StoneCastle Placement Advisors, LLC into Castle Placement Group, LLC:

> From 2009 through 2015, StoneCastle Placement Advisors, LLC (currently named Castle Placement Group, LLC) had an agreement to provide its services through StoneCastle Securities, LLC, an entity registered with FINRA. During that time period, StoneCastle Securities held the FINRA licenses of Mr. Luftig and Mr. Margolis. In 2015, Castle Placement, LLC registered with FINRA and, from that point through the present, Castle has held the licenses of Mr. Luftig and Mr. Margolis.
>
> In 2011, Citadel asked Castle to assist it in soliciting the investors for the financing it sought. Mr. Luftig and Mr. Margolis agreed to do so.
>
> On or about October 25, 2011, Citadel signed an agreement with StoneCastle Securities, LLC for Castle to provide such services (the "Agreement"). The Agreement is attached hereto as Exhibit A. Pursuant to the Agreement, Citadel retained StoneCastle Securities, acting through Castle, to be the exclusive placement agent for Citadel. As the exclusive placement agent, Citadel agreed to compensate StoneCastle if an investment occurred regardless of whether StoneCastle was involved in finding the particular investor.
>
> Castle, through Mr. Luftig and Mr. Margolis, performed all services requested by Citadel pursuant to the Agreement. In fact, Castle had over 1,000 communications with prospective investors by meeting, phone and/or email. As a result of Castle's efforts, at least 118 qualified institutional investors (including Seer Capital — one of the ultimate investors — and several of the largest institutional investors in the world) were interested in the transaction ....
>
> While described as compensation to StoneCastle Securities, LLC, the parties understood that Castle,

> through Mr. Luftig and Mr. Margolis, would be
> performing the work and would be entitled to
> compensation.  As such, the Agreement explicitly
> requires that notices under the Agreement be delivered
> to Mr. Luftig.  In fact, the Agreement specifically stated
> that any rights, duties and obligations thereunder,
> "shall inure to the benefit of and be binding upon the
> successors, assigns *and personal representatives* of
> each of the parties hereto." (Agreement at ¶ 16).  Castle,
> Mr. Luftig, and Mr. Margolis are such personal
> representatives.

(Tein Reply Decl., Ex. 1 (emphasis in original)).

As further evidence that Citadel and StoneCastle understood the

Arbitration Provision to include Castle, the Statement of Claim explained that

the signatories to the Placement Agreement

> included a broad indemnification provision which
> states: "[Citadel] agrees to indemnify, or cause Newco to
> indemnify, on a joint and several basis, **the Placement
> Agent, any controlling person of the Placement
> Agent and each of their respective directors,
> officers, employees, Agent, affiliates and
> representatives** (each, an 'Indemnified Party') and hold
> each of them harmless against any and all losses,
> claims, damages, expenses, liabilities, joint or several
> (collectively, 'Liabilities') to which the Indemnified
> Parties may become liable, directly or indirectly, arising
> out of, or relating to, the agreement to which this
> Schedule I is attached (the 'Agreement') or the
> Placement Agent's services thereunder …" (Agreement,
> Schedule I at 11 (emphasis added)).

(Tein Reply Decl., Ex. 1 (emphasis in original)).

In addition to addressing arbitrability issues, the Statement of Claim also

summarized the merits of Castle's claim.  In brief, Castle alleged that Citadel

had closed a financing transaction as contemplated by the Placement

Agreement in or around May 2013, for which it failed to compensate

StoneCastle.  (Tein Reply Decl., Ex. 1).  As a result, Castle claimed breach of contract, as well as quasi-contract theories of *quantum meruit* and unjust enrichment; it requested an accounting and demanded over $7 million.  (*Id.*).

On October 30, 2018, FINRA sent Castle a deficiency notice, pointing out that the Arbitration Provision was between StoneCastle and Citadel.  (Tein Decl. ¶ 9, Ex. B).  In response, the Castle entities asserted that they were entitled to invoke the Arbitration Provision as "agents" of StoneCastle.  (Tein Decl., Ex. B).  Castle reiterated that it "formerly operated under the name StoneCastle Portfolio Advisors, LLC and, by agreement between Castle and StoneCastle Partners, LLC, provided its services in the name of and by affiliation with StoneCastle Securities, LLC."  (*Id.*).  Further, Castle attached an employment agreement between StoneCastle Partners, LLC and Margolis and Luftig, and explained as follows:

> The agreement calls for Ken Margolis and Richard Luftig to act on behalf of StoneCastle Portfolio Advisors (now known as Castle), and that if StoneCastle Portfolio Advisors, LLC (*i.e.*, Castle) "activities creates revenue paid to StoneCastle Securities, LLC (because the capital raising contracts that [Castle] secures by you are **contracted through StoneCastle Securities, LLC**), or any other entity besides [Castle] then that revenue shall be treated the same in the calculation of [Castle] Net Profits **as if that revenue had been paid to [Castle]**."

(*Id.* (emphasis and alterations in original)).  Castle's letter to FINRA also explained that

> Castle secured the [Placement] Agreement in the name of StoneCastle Securities, LLC and StoneCastle Securities, LLC provided the services called for under the [Placement] Agreement through Castle, *i.e.*, Castle

was StoneCastle Securities LLC's agent. In fact, as stated in the Statement of Claim, pursuant to StoneCastle Securities' agreement to act as exclusive placement agent for Citadel, "Castle had over 1,000 communications with prospective investors by meeting, phone and/or email" pursuant to that Agreement.

(Tein Decl., Ex. B).

In the alternative, Castle explained that "even if Castle was not a direct party to the arbitration clause of the Agreement by virtue of its contractual agency relationship, the fact that Castle is, at a minimum, an intended third-party beneficiary of the Agreement, still renders FINRA arbitration binding on Castle and Citadel Services Corp." (Tein Decl., Ex. B).

In November 2018, without giving Citadel notice or an opportunity to respond, FINRA accepted Castle's jurisdictional argument and mailed a form memorandum to Citadel advising that Castle had filed a claim in arbitration and directing Citadel to answer. (Tein Decl. ¶ 11). The next month, Citadel filed a complaint in the United States District Court for the Central District of California seeking a declaratory judgment against Castle. (*Id.* at ¶ 12). Then, in January 2019, Citadel filed a formal motion before FINRA to dismiss the arbitration or stay it pending a federal court's decision on arbitrability. (*Id.* at ¶ 13).

FINRA scheduled Citadel's motion to dismiss or stay for a telephonic hearing on May 13, 2019. (Tein Decl. ¶ 13). Then, while the motion was pending, FINRA issued interim "orders" directing Citadel's compliance with a host of seemingly expensive and time-consuming pre-trial requirements, including paying its forum fees and the hourly fees of the three arbitrators,

8

answering, complying with discovery, attending pretrial telephone hearings, preparing for the final hearing, and flying witnesses and counsel to the final hearing at FINRA's office in New York. (*Id.* at ¶ 14). On April 8, 2019, the Central District of California court dismissed Citadel's declaratory judgment action without prejudice for lack of personal jurisdiction over Castle. (*Id.* at ¶ 15).

On June 6, 2019, a month after the telephonic hearing, the FINRA panel entered an order denying Citadel's motion to dismiss or stay the arbitration and granted Castle's motion to amend their statement of claim to add Luftig and Margolis. (Tein Decl. ¶ 17). Thus, arbitral proceedings between Citadel and Defendants are currently pending before FINRA.

**B.      Procedural Background**

On April 10, 2019, Citadel filed its complaint in this action against Castle, seeking a declaratory judgment that the claims asserted in the FINRA arbitration between the parties are not subject to arbitration. (Dkt. #1). On June 10, 2019, Castle filed a pre-motion letter seeking leave to file a motion to dismiss Citadel's complaint. (Dkt. #14). Citadel filed its own letter the same day, requesting leave to move for a preliminary injunction enjoining the FINRA arbitration. (Dkt. #15). On July 17, 2019, the Court held a conference and invited the parties to submit a proposed briefing schedule for their respective motions. (Minute Entry for 7/17/19).

On July 23, 2019, Citadel filed an amended complaint adding Luftig and Margolis as defendants. (Dkt. #17). On July 25, 2019, the Court adopted the

9

parties' proposed briefing schedule. (Dkt. #21). Citadel filed its motion for a preliminary injunction on August 2, 2019. (Dkt. #22, 23, 24). Defendants filed their cross-motion to compel arbitration on August 16, 2019. (Dkt. #27, 28, 29). Citadel filed a joint reply to its motion for a preliminary injunction and an opposition to Defendants' motion to compel arbitration on September 10, 2019. (Dkt. #32, 33). Defendants filed their joint reply in support of their cross-motion and opposition to Citadel's motion for a preliminary injunction on September 20, 2019. (Dkt. #34). Accordingly, Citadel's motion for a preliminary injunction and Defendants' motion to compel arbitration are ripe for review.

## DISCUSSION

### A.      Applicable Law

#### 1.      The Standard for a Preliminary Injunction

To obtain a preliminary injunction, a plaintiff must demonstrate: (i) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (ii) "that he is likely to suffer irreparable injury in the absence of an injunction"; (iii) that the balance of hardships between the plaintiff and defendant "tips in the plaintiff's favor"; and (iv) that the "public interest would not be disserved by the issuance of a preliminary injunction." *Salinger* v. *Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) (alterations and internal quotation marks omitted); *see generally Trump*

v. *Deutsche Bank AG*, 943 F.3d 627, 634-36 (2d Cir. 2019), *cert. granted*,
No. 19-760, 2019 WL 6797733 (U.S. Dec. 13, 2019).

### 2. The Standard for a Motion to Compel Arbitration

The Court must evaluate a motion to compel arbitration pursuant to the
Federal Arbitration Act (the "FAA") under a standard similar to that for a
summary judgment motion. *See Bensadoun* v. *Jobe-Riat*, 316 F.3d 171, 175 (2d
Cir. 2003).[2] "If there is an issue of fact as to the making of the agreement for
arbitration, then a trial is necessary." *Id.* (citing 9 U.S.C. § 4). However, the
"party to an arbitration agreement seeking to avoid arbitration generally bears
the burden of showing the agreement to be inapplicable or invalid." *Harrington*
v. *Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010); *accord Green Tree
Fin. Corp.-Ala.* v. *Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting
arbitration bears the burden of proving that the claims at issue are unsuitable
for arbitration."); *Application of Whitehaven S.F., LLC* v. *Spangler*, 45 F. Supp.
3d 333, 342-43 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper
because the arbitration agreement is invalid under a defense to contract

---

[2]     *See also City of Almaty* v. *Sater*, No. 19 Civ. 2645 (AJN) (KHP), 2019 WL 6681560, at *6
(S.D.N.Y. Dec. 6, 2019):

> When deciding a motion to compel arbitration and stay all or part
> of a litigation pursuant to the FAA, the court applies a "standard
> similar to that applicable for a motion for summary judgment."
> *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting
> *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)).
> Under this standard, the court considers all relevant, admissible
> evidence contained in the pleadings, admissions on file, and
> affidavits. *Id.* (citations omitted). In the absence of a genuine issue
> of material fact regarding the formation of the arbitration
> agreement, the motion to compel and to stay the litigation (in whole
> or in part) must be granted if the dispute falls within the scope of
> the arbitration agreement.

11

formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense." (internal quotation marks omitted)). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc.* v. *Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

**B.    Citadel's Motion for a Preliminary Injunction Is Denied and Defendants' Motion to Compel Arbitration Is Granted**

### 1.    Principles of Arbitrability

Three interrelated legal principles inform a federal court's analysis of issues of arbitrability. *First*, courts abide by the general presumption that they decide issues of arbitrability. *See Telenor Mobile Comm'ns AS* v. *Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009) ("[A]rbitrability questions are presumptively to be decided by the courts, not the arbitrators themselves."); *Contec Corp.* v. *Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005). This includes the question of whether an arbitration contract binds non-signatories. *See First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 943-46 (1995); *BG Grp. PLC* v. *Republic of Argentina*, 572 U.S. 25, 34 (2014) (noting that arbitrability disputes "include questions such as whether the parties are bound by a given arbitration clause" (internal quotation marks omitted)). "A reviewing court must always ascertain for itself whether a resisting party is subject to a valid arbitration agreement, because even the broadest arbitration clause cannot bind a party who never agreed to it." *Iota Shipholding Ltd.* v. *Starr Indemnity*

*and Liability Co.*, No. 16 Civ. 4881 (KPF), 2017 WL 2374359, at *6 (S.D.N.Y. May 31, 2017) (internal quotation marks and alterations omitted).

   *Second*, to rebut that presumption, parties to an arbitration agreement "may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable." *PaineWebber Inc.* v. *Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996). It is the arbitration agreement itself that is determinative in deciding whether the arbitrability of the dispute is to be resolved by the court or by the arbitrator. *Metro. Life Ins. Co.* v. *Bucsek*, 919 F.3d 184, 189 (2d Cir. 2019). "Just as the parties may elect through their contract to have arbitrators (rather than a court) resolve categories of disputes between them, they may similarly contract to have arbitrators (rather than a court) decide whether a particular dispute is to be arbitrated under the terms of the contract." *Id.* at 189-90; *see Rent-A-Ctr., W., Inc.* v. *Jackson*, 561 U.S. 63, 66, 69 (2010) (finding an arbitration agreement giving arbitrators "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement" empowered the arbitrators to resolve arbitrability of an unconscionability claim); *see also First Options*, 514 U.S. at 943 ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, ... so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." (emphasis in original) (internal citation omitted)). When parties have contracted to submit the question of the arbitrability of a dispute to arbitrators,

courts must respect and enforce that contractual choice.  *See Henry Schein,*

*Inc.* v. *Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

*Third*, "[i]t is a fundamental tenet of law that only by agreeing to arbitrate

does a person surrender the right of access to a court for the resolution of a

legal dispute that is subject to adjudication."  *Bucsek*, 919 F.3d at 190.  Thus,

for parties to delegate threshold questions of arbitrability to the arbitrator, they

must do so by "clear and unmistakable evidence."  *First Options*, 514 U.S. at

944.[3]

Despite these longstanding principles, it is rare that an arbitration

agreement will directly state whether the arbitrator or the court is to decide any

given issue of arbitrability.  *Bucsek*, 919 F.3d at 191.  In consequence, courts

must "examine other provisions of the agreement to interpret the contractual

intent of the parties on that issue."  *Id.* at 194.  Clear and unmistakable

evidence of an intent to arbitrate can be inferred from, *inter alia*, the following

provisions in a contract: (i) broad language expressing an intention to arbitrate

all aspects of all disputes; (ii) the incorporation by reference of arbitration rules

---

[3]    "[I]n interpreting an arbitration agreement we apply the principles of state law that govern the formation of ordinary contracts."  *PaineWebber Inc.* v. *Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996).  Schedule IV to the Placement Agreement says that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of New York."  (Compl., Ex. A).  Therefore, New York law applies to the question of whether the parties have agreed to arbitrate whether Defendants can enforce the Arbitration Provision.  That said, "New York law ... follows the same standard as federal law with respect to who determines arbitrability: generally, it is a question for the court unless there is a clear and unmistakable agreement to arbitrate arbitrability."  *Contec Corp.* v. *Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 n.1 (2d Cir. 2005) (internal quotation marks omitted).  Further, "New York follows the common law rule that in interpreting a contract, the intent of the parties governs, and therefore, a contract should be construed so as to give full meaning and effect to all of its provisions."  *Bybyk*, 81 F.3d at 1199 (internal quotation marks and alterations omitted).

that empower an arbitrator to decide issues of arbitrability; and (iii) the waiver of the right to seek remedies in court. *See id.* at 190-92.

## 2. Analysis

Castle sources its arguments to the Arbitration Provision itself, which explicitly grants rights to "agents" of StoneCastle:

> The Company and StoneCastle agree that all controversies between the Company and StoneCastle *and/or any of their agents* arising out of or concerning this Agreement, the services provided hereunder, or any related matter shall be determined by arbitration in accordance with the rules of the Financial Industry Regulatory Authority (FINRA).

(Compl., Ex. A at Schedule IV (emphasis added)). The question before the Court is whether it or an arbitrator determines whether Castle is indeed an "agent" of StoneCastle entitled to enforce the Arbitration Provision. If it is the arbitrator that answers that question, then the Court must deny Citadel's motion and grant Defendants' motion. If it is the Court that answers the question, then the Court must proceed to consider the merits question of whether Defendants are indeed agents of StoneCastle and therefore entitled to enforce the Arbitration Provision.

The Arbitration Provision, and the Placement Agreement more generally, manifest the signatories' intent that the arbitrator, rather than the Court, is to decide whether Castle can enforce the Arbitration Provision. At the outset, the Court notes the broad scope of the Provision, which recites that "*all* controversies arising between the Company and StoneCastle and/or any of their agents arising out of or concerning this Agreement, the services provided

hereunder, *or any related matter* shall be determined by arbitration[.]" (Compl., Ex. A at Schedule IV (emphasis added)). The Arbitration Provision's referral of "all controversies" and "any related matter" to arbitration generally reflects a broad grant of power to the arbitrators to assess arbitrability. *See Wells Fargo Advisors, LLC* v. *Sappington*, 884 F.3d 392, 394, 396 (2d Cir. 2018) (A clause expressing agreement "to arbitrate any dispute, claim or controversy that may arise between you and Wells Fargo Advisors, or a client, or any other person[, and] "demonstrate[d] the parties' clear and unmistakable intent to arbitrate all questions of arbitrability."); *Benihana, Inc.* v. *Benihana of Tokyo, LLC*, 784 F.3d 887, 898 (2d Cir. 2015) (finding agreement that required arbitration of "any and all" disputes between the parties relating to their agreement to constitute clear and unmistakable evidence of parties' intent for arbitrator to decide arbitrability); *Shaw Grp. Inc.* v. *Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) ("[E]ven absent an express contractual commitment of the issue of arbitrability to arbitration, a referral of 'any and all' controversies reflects such a 'broad grant of power to the arbitrators' as to evidence the parties' clear 'inten[t] to arbitrate issues of arbitrability.'" (quoting *Bybyk*, 81 F.3d at 1199-1200 (A contractual provision that "any and all controversies … concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement … shall be determined by arbitration" was found to "evidence the parties' intent to arbitrate all issues, including arbitrability.")).

While the introductory clause of the Arbitration Provision evinces an intent by Citadel, StoneCastle, and "any of their agents" to submit "all"

16

disputes to arbitration, there remains the antecedent issue of whether Defendants qualify as "agents" of StoneCastle. A close read of the remainder of the Arbitration Provision — in particular, the "any related matter" language — indicates that the signatories delegated the determination of this issue to the arbitrator. (*See* Compl., Ex. A at Schedule IV). By explicitly stating that "agents" were entitled to arbitrate controversies "arising out of or concerning" the Placement Agreement, and then stating that "any related matter" should also be determined in arbitration, the signatories provided clear and unmistakable evidence of an intent to delegate the determination of agency to the arbitrator. (*Id.*). Whether Castle is an "agent" of StoneCastle within the meaning of the Placement Agreement (and therefore entitled to arbitrate against Citadel) is precisely a "related matter" that "shall be determined by [FINRA] arbitration." (*Id.*).

Citadel cites *Republic of Iraq* v. *BNP Paribas USA*, 472 F. App'x 11 (2d Cir. 2012) (summary order), in arguing that "to decide whether arbitration of arbitrability at a non-signatory's behest is appropriate, [the] court must first determine whether the non-signatory and the signatory have a sufficient relationship to each other and to the rights created under the agreement." (Pl. Br. 7 (internal quotation marks omitted)). However, Citadel's reliance on this case is misplaced. In *BNP Paribas*, the relevant arbitration clause stated:

> Any dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination, or invalidity thereof, unless settled amicably under Article 1.23.1 within sixty (60) days after receipt by one Party of the other Party's request for such amicable

> settlement, shall be referred by either Party to arbitration in accordance with the UNCITRAL Arbitration Rules then obtaining and the directions contained in this Article 1.23.2.... The Parties shall be bound by the arbitration award rendered in accordance with such arbitration as the final adjudication of any such dispute, controversy, or claim.

472 F. App'x at 12-13.  The Second Circuit held that this language did not "provide clear and unmistakable evidence that the particular question of arbitrability at issue here — whether Iraq may invoke the arbitration clause as a third-party beneficiary of the contract — should be decided by arbitrators." *Id.* at 13.  The Court explained that the "language specifically says that a dispute 'shall be referred by either *Party* to arbitration' and that the '*Parties*' shall be bound by the award."  *Id.* (emphasis in original).  Thus, the "arbitration clause d[id] not clearly vest any right to invoke arbitration in a non-party such as Iraq, *a fortiori*, it d[id] not afford Iraq the right to have arbitrators rather than a court determine the arbitrability of its dispute."  *Id.*[4]

In sharp contrast, the Arbitration Provision here explicitly vests rights to arbitrate in "any of [Citadel and StoneCastle's] agents."  (Compl., Ex. A at

---

[4]     Citadel also cites *Gerszberg* v. *Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282 (S.D.N.Y. 2016).  That case was similar to *BNP Paribas*, however, in that a non-signatory was seeking to arbitrate against a signatory on the grounds that it was a third-party beneficiary to the relevant arbitration agreement.  *Id.* at 286.  The non-signatory's argument that the arbitrator should decide whether it was a third-party beneficiary was not rooted in the text of the arbitration provision itself.  *Id.* at 288-91.  The court reserved for itself the question of whether the non-signatory was actually a third-party beneficiary entitled to enforce the arbitration agreement.  *See id.* at 291-93; *see also Holzer* v. *Mondadori*, No. 12 Civ. 5234 (NRB), 2013 WL 1104269, at *8 (S.D.N.Y. Mar. 14, 2013) ("[W]hen an arbitration clause *does not expressly provide* for arbitral resolution of disputes with non-signatories, courts have looked to 'whether the parties have a sufficient relationship to each other and to the rights created under the agreement' to warrant submitting issues of arbitrability to the arbitrator." (emphasis added) (quoting *Contec*, 398 F.3d at 209)).

Schedule IV). And, it vests StoneCastle's "agents" with the right to submit to arbitration any matter related to controversies "arising out of or concerning the Placement Agreement [and] the services provided [under it]." (*Id.*). Thus, unlike Iraq in *BNP Paribas*, Defendants here are explicitly vested with the right to have the arbitrator decide whether they are agents of StoneCastle, and therefore entitled to proceed in arbitration despite being non-signatories to the Placement Agreement.

Other provisions in the Placement Agreement reinforce the Court's conclusion that the signatories intended for the arbitrator to determine this question of arbitrability. The Placement Agreement contains an entire schedule, Schedule IV, dedicated to outlining the signatories' commitment to arbitration, and ensuring that the parties understood they would be waiving certain rights by doing so. Importantly, the signatories agreed they would be "giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in a claim is filed." (Compl., Ex. A at Schedule IV). Courts have routinely found that language in a contract waiving the signatories' right to sue each other in court provides at least some evidence of an intent to delegate arbitrability issues to the arbitrator. *See, e.g., Wells Fargo*, 884 F.3d at 394, 396-98 (finding "an intent to delegate to an arbitrator any questions of arbitrability," where arbitration clause stated that parties were "giving up the right to sue Wells Fargo Advisors … in court concerning matters related to or arising from your employment"); *Bybyk*, 81 F.3d at 1199 ("Several provisions in the Agreement

evidence the parties' intent to arbitrate all issues, including arbitration: …

'[T]he parties are waiving their right to seek remedies in court.'").

Additionally, the Placement Agreement explicitly incorporates the FINRA

Rules in two separate places.  The Arbitration Provision recites that

> [t]he Company and StoneCastle agree that all
> controversies between the Company and StoneCastle
> and/or any of their agents arising out of or concerning
> this Agreement, the services provided hereunder, or any
> related matter shall be determined by arbitration *in
> accordance with the rules of the Financial Industry
> Regulatory Authority (FINRA).*

(Compl., Ex. A at Schedule IV).  Schedule IV then states that "the rules of the

arbitration forum in which the claim is filed … shall be incorporated into this

Agreement."  (*Id.*).

As relevant here, FINRA Rule 13413 states that the "panel has the

authority to interpret and determine the applicability of all provisions under

this Code."  Thus, the FINRA Rules empower an arbitrator to decide issues of

arbitrability.  *See Murray* v. *UBS Securities, LLC*, No. 12 Civ. 5914 (KPF), 2014

WL 285093, at *13 (S.D.N.Y. Jan. 27, 2014); *see also Alliance Bernstein Inv.

Research and Mgmt., Inc.* v. *Schaffran*, 445 F.3d 121, 127 (2d Cir. 2006); *cf.

Bucsek*, 919 F.3d at 193-95 ("Rule 13413's support for an inference of

contractual intent to confer arbitrability on the arbitrator is only moderate.").

And courts have concluded that when "parties explicitly incorporate rules that

empower an arbitrator to decide issues of arbitrability, the incorporation serves

as clear and unmistakable evidence of the parties' intent to delegate such

issues to an arbitrator."  *Contec*, 398 F.3d at 208; *see, e.g., Schneider* v.

*Kingdom of Thailand*, 688 F.3d 68, 72-73 (2d Cir. 2012) (holding incorporation of UNCITRAL Arbitration Rules, which empower the arbitrator to decide issues of arbitrability, constituted clear and unmistakable evidence of intent to delegate arbitrability question to arbitrator); *Shaw Grp.*, 322 F.3d at 122 (holding reference to International Chamber of Commerce rules constituted clear and unmistakable evidence of intent to delegate arbitrability issues to arbitrator). To be clear, recent case law teaches the Court that the incorporation of FINRA Rules is "not necessarily sufficient to support a clear and unmistakable inference of intent to arbitrate arbitrability," *see Bucsek*, 919 F.3d at 195; incorporation in this case merely provides further support for the Court's conclusion, derived from the plain text of the Arbitration Provision, that arbitrability question are delegated to the arbitrator.

Citadel's remaining arguments regarding why the Court, rather than the arbitrator, should determine whether Defendants can arbitrate are unpersuasive. For starters, Citadel argues that the Placement Agreement's forum selection clause — which states that "[a]ny claim or action arising under this Agreement and not subject to arbitration in accordance with this section … may be brought in the state or federal courts located in the Borough of Manhattan in The City of New York, and [Citadel] hereby irrevocably consents to and accepts the exclusive jurisdiction of such courts" — evidences the parties' understanding that not every dispute arising under the Placement Agreement would be arbitrated, and, by extension, their intent that a New York court would determine arbitrability. (Compl., Ex. A at Schedule IV; Pl. Opp. 6).

Not so.  It is true that this forum selection provision indicates that the signatories contemplated that certain disputes might arise under the Placement Agreement that would not be arbitrable.  However, that the signatories specified a forum for claims that were not arbitrable (after waiving their rights to sue each other) does not undercut the evidence in the Placement Agreement that the question of whether Defendants are "agents" is arbitrable. *See Offshore Expl. and Prod., LLC* v. *Morgan Stanley Private Bank, N.A.*, 626 F. App'x 303, 307 (2d Cir. 2015) (summary order) ("[T]he forum selection clause is not all-inclusive or mandatory, and it should therefore be read as complementary; the parties merely consented to the jurisdiction of courts in New York for those disputes under the Escrow Agreement that they did not agree to arbitrate under the SPA.").

Further, Citadel explains that when it moved FINRA to stay the arbitration, on grounds that Defendants' claims were not arbitrable, FINRA responded that it would "continue to process the … arbitration unless or until [it] receive[s] a court order staying the matter."  (Tein Reply Decl. ¶ 3 (alterations in original), Ex. 2).  Citadel argues that by issuing this statement, "FINRA implicitly recognized that a court should decide arbitrability."  (Pl. Reply 7).  As Defendants aptly put it, and contrary to Citadel's assertion, the FINRA Director did not invite a court determination of arbitrability.  The referenced letter is merely a non-controversial statement that FINRA would comply with a court order if Citadel could obtain one.  (Def. Reply 6 n.3).

Citadel's final argument is that the Arbitration Provision "simply indicates that, consistent with settled case law, StoneCastle and Citadel agreed to arbitrate disputes that one signatory might bring against the other signatory and its agents." (Pl. Reply 9 (emphasis in original)). That proposition has no support in the text of the Arbitration Provision, which plainly reads to the contrary. That is, the text of the Arbitration Provision indicates that "agents," however defined, could enforce the Arbitration Provision just as they could have it enforced against them. (Compl., Ex. A at Schedule IV).

The Court concludes that Citadel and StoneCastle contractually delegated the question of whether Defendants are "agents" of StoneCastle entitled to enforce the Arbitration Provision to the arbitrator. Because that question is properly decided by the arbitrator, rather than the Court, Citadel cannot show that it will be irreparably harmed by proceeding in arbitration before FINRA.

## CONCLUSION

For the reasons stated in this Opinion, Citadel's motion for a preliminary injunction is DENIED and Defendants' motion to compel arbitration is GRANTED. The Clerk of Court is ordered to terminate the motions at docket entries 22 and 27 and to stay the case. *See Katz* v. *Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015). The Parties are further ORDERED to update the Court on or before **July 3, 2020**, regarding the status of the arbitration.

SO ORDERED.

Dated:      December 19, 2019
             New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge